The STATE ex rel. BILLIS

v.

SUMMERS.

[Cite as *State ex rel. Billis v. Summers* (1992), 76 Ohio App.3d 848.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–006.

Decided March 5, 1992.

*Harland M. Britz* and *John A. Coble,* for relator.

*Carl F. Dorcas* and *Robert A. Pyzik,* for respondent.

SHERCK, Judge.

This is an action in quo warranto brought by a citizen who was duly elected to Sylvania City Council, but who was refused a seat on that council for the reason that he is unqualified to serve. Based on an analysis of the language and history of the Sylvania City Charter, we find that relator is not unqualified to serve on the city's council. Therefore, we grant his petition for the writ, order that respondent remove himself from relator's council seat, and further direct that relator be installed therein.

On November 5, 1991, relator, John A. Billis, was elected to Sylvania City Council for a full term ending December 31, 1995. His election was certified by the Lucas County Board of Elections, and, on December 16, 1991, relator filed with the Clerk of Sylvania City Council a properly executed written oath of office.

On January 2, 1992, Sylvania City Council met for its organizational meeting. At that meeting, a question arose as to relator's qualifications to serve on Sylvania City Council. Sylvania's Director of Law pointed out that Section 2.0, Article III of the city charter provided that " * * * [n]o member of Council shall hold any other elective public office or *any other municipal office or employment."* (Emphasis added.) Relator, it was noted, is employed by the city of Toledo Police Division as a police officer.

Following a brief discussion, council approved a motion by a vote of six to one declaring relator disqualified from holding the office to which he was elected and further refusing to seat him. At a subsequent meeting, the Sylvania City Council appointed respondent, Ted Summers, to fill the council vacancy created by the council's refusal to seat relator. Relator then filed with this court an original action in quo warranto asserting that respondent usurped the place rightfully and legally due relator. Relator asks this court to determine that he is lawfully qualified to serve as a member of the Sylvania City Council, to oust respondent from that position, and to reinstall relator to his duly elected office.

■ The determining issue in this matter is whether relator's employment as a Toledo police officer is within the scope of the "other municipal office or employment" proscribed by Section 2.0, Article III of the Sylvania City Charter.[1]

Relator argues that the charter's confining words, "other municipal office or employment," prohibit a councilperson from occupying any other *Sylvania* municipal office or holding other *Sylvania* employment. Thus, relator asserts that his employment with Toledo does not disqualify him from serving on Sylvania City Council.

Respondent counters by citing Article I of the Sylvania City Charter, which states that the "municipal corporation now * * * known as the City of Sylvania, Ohio, [is] hereinafter in this charter called the 'city.'" Also, "[t]he term 'city' as used in this charter shall be construed to mean the municipality of Sylvania * * *." This, according to respondent, is definitional for both words. "City" refers to the city of Sylvania, while "municipal" or "municipality" refers to a broad category, including any village or city. Thus, contends respondent, if the framers of the Sylvania City Charter had sought to disqualify only Sylvania employees from city council, they would have used the phrase "other 'city' employment" rather than the broader "other 'municipal' employment."

"The message of the established law of Ohio is clear: our citizens must be confident that their vote, cast for a candidate or an issue, will not be disturbed except under extreme circumstances * * *." *In re Election of November 6, 1990 for the Office of Attorney General of Ohio* (1991), 58 Ohio St.3d 103, 105, 569 N.E.2d 447, 450.

---

1. Respondent argues that relator's position as a policeman embodies him with the police powers of the state and that he is thus an officeholder rather than merely an employee. Whether or not this is so is not relevant to our decision.

"The law does not look with favor upon declaring a forfeiture in an office to which one has been elected in a legal manner. * * * The people, by their votes, determine their choice of officers, and they should not be robbed of the fruits of such choice for slight or insufficient reasons * * *." *State ex rel. Corrigan v. Hensel* (1965), 2 Ohio St.2d 96, 100, 31 O.O.2d 144, 147, 206 N.E.2d 563, 566, citing *State ex rel. Lease v. Turner* (1924), 111 Ohio St. 38, 45, 144 N.E. 599, 601.

Accordingly, absent a clear and substantial showing that relator is not qualified to hold the office to which he was elected, he must prevail.

"Where a statute is silent as to the meaning of a word contained therein and that word has both a wide and restricted meaning, courts * * * must give such word a meaning consistent with other provisions of the statute and the objective to be achieved thereby." *Heidtman v. Shaker Hts.* (1955), 163 Ohio St. 109, 56 O.O. 171, 126 N.E.2d 138, paragraph one of the syllabus.

■ Words and phrases in a statute must be read in context and as a part of the whole. R.C. 1.42; *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 102, 543 N.E.2d 1188, 1195.

Section 2.0, Article III of the Sylvania City Charter provides:

"SECTION 2.0  QUALIFICATIONS.

"A member of Council shall have been continuously a resident and an elector of the City for two (2) years immediately prior to the date of his election or appointment, and each such member shall continue to be a resident and an elector therein throughout his term of office.  No member of Council shall hold any other elective public office or any other municipal office or employment.  No member of Council shall be interested in the profits or emoluments of any contract, job, work or service for which moneys of the City are expended.  Council shall be the sole and final judge of the election and qualification of its members."

The sentence prohibiting other "municipal employment" is located in a section of the charter that is clearly designed to assure that councilmembers have a genuine interest in the city and that the personal interests of members not conflict with those of the city.  The first sentence of Section 2.0, Article III mandates that a member of council be an elector and continuous resident of Sylvania for two years prior to election; additionally, the member must maintain these qualifications throughout the member's tenure in office.  The sentence immediately following the one in question prohibits a councilmember from having any interest in a contract or work for which city monies will be expended.  Similarly, the beginning of the sentence which prohibits "other

municipal employment" states that a councilmember may not hold any other "elective public office."

It is a legitimate governmental interest to avoid "actual or potential conflicts of interest as well as the appearance of impropriety by city council members." *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 911. The question in the present case is not, however, whether a city charter may proscribe a city councilman from public employment, but whether, in fact, the people of Sylvania intended this result when they adopted Section 2.0, Article III.

Three factors persuade us that it was the intention of the people of Sylvania to use the word "municipal employment" in alliance with "Sylvania employment."

First, the rules of construction direct us to interpret a statute in context and as part of the whole, R.C. 1.42. Relator correctly argues that were we to accept respondent's broad definition of the word "municipal" and consistently apply that definition throughout the charter, the results would be absurd. For example, in several sections of Article III certain events are predicated on "a regular municipal election." See, also, Section 1.0, Article X. If the reading of the word "municipal" meant any city or village, the result would be a time certain determined by the incidence of some election at some municipality somewhere.[2]

We must additionally ask what logical reason the drafters of the Sylvania City Charter would have to disqualify from council membership those who work for any village or any city, yet fail to disqualify officers or employees of other political subdivisions. Respondent's interpretation of the word "municipal" prohibits relator, a Toledo policeman, from serving on Sylvania City Council, while someone holding an identical position with the Lucas County Sheriff's Department, the highway patrol or the township police would be permitted to hold such an office.[3] The logic of this distinction evades us.

Second, we must give words a reading consistent with their common meaning. The word "municipal" is defined as, " * * * of or relating to the internal affairs of a major political unit * * *: of, relating to, or characteristic

---

**2.** Respondent seeks to qualify inconsistent uses of the word "municipal" elsewhere in the Sylvania Charter by advancing various reasons and constructions to make these uses' exceptions. We are not persuaded that these exceptions are not the rule as to the meaning of the word.

**3.** One of the most cited Ohio cases in the area of compatibility of offices is *Pistole v. Wiltshire, infra,* which found no conflict between one holding the position of township trustee simultaneously with being employed as a deputy sheriff, even through the township might contract with the sheriff's department for police protection.

of a municipality * * *: having local self government * * *: restricted to one locality[.]"  Webster's Ninth New Collegiate Dictionary (9 Ed.1990) 780.  This usage favors reference to a specific entity rather than the broad use advanced by respondent.

Finally, we look to an interpretation actually given the phrase shortly after the Sylvania City Charter was enacted:

"[C]ontemporaneous construction, as evidenced by usage, will not be departed from without most cogent reasons;  and if the construction be doubtful, usage will control."  *Chesnut v. Shane's Lessee* (1847), 16 Ohio 599, syllabus.

The parties have stipulated[4] that at the time Sylvania's Charter Commission was preparing the language at issue, the then-village was governed by a mayor, village council, and board of public affairs.  One member of the board of public affairs was Warren Schuster, who was employed as a fireman by the village of Ottawa Hills.  After the Sylvania Charter was adopted in 1961, Schuster was elected to Sylvania Council on which he served until 1970.  From 1970 until 1978, Schuster served as the elected mayor of Sylvania.  During a portion of his tenure as a Sylvania elected official, Schuster also served as the fire chief for Ottawa Hills.

The parties stipulated that during his first term on council, Schuster inquired of the city solicitor whether his employment with Ottawa Hills jeopardized his council seat.  The then-city solicitor told Schuster that he could hold both positions so long as Sylvania had no contracts with Ottawa Hills.  The city solicitor gave no basis for his opinion other than "he had checked with" the Ohio Attorney General's Office and was informed that there was "no problem" in holding both offices.

The Warren Schuster example is enlightening for a number of reasons.  As early as a year after the Sylvania Charter was enacted, the issue of a councilmember holding employment with another municipality was raised.  It would seem that with the enactment of the charter so fresh in the minds of the council, the former charter commission members, and the people of Sylvania that, had the intent of the Sylvania Charter been to preclude city councilmembers from employment at other municipalities, that would have been the time to express such sentiment.  Instead, the only person to raise the issue was Schuster, the one person who might have been negatively impacted by the charter language.  In response, the city solicitor turned the matter over to the Attorney General's Office.  We can infer that had it been the intent of the Sylvania Charter to preclude councilmembers from engaging in

---

4. Respondent's motion to strike portions of the stipulated statement of facts was overruled in a ruling made by the bench prior to commencement of oral argument.

outside municipal employment, it would have been unnecessary for the city solicitor to make an inquiry with the Attorney General's Office. If respondent's interpretation of the charter had been intended, the solicitor need look no further than his own city council or the commission members who drafted the charter. Rather, an inquiry to the Attorney General's Office, arguably, would not have been for interpretation of the charter language, but for advice as to whether the office of a city councilmember was legally compatible with that of a fireman. At that point in time, responses from the Attorney General's Office frequently found compatibility conditioned on there being no contracts between the two political subdivisions. See *Pistole v. Wiltshire* (C.P.1961), 90 Ohio Law Abs. 525, 22 O.O.2d 464, 189 N.E.2d 654.[5]

Accordingly, we find only minor ambiguity in the use of the word "municipal" in Section 2.0, Article III of the Sylvania City Charter. By examining the questioned word in the context in which it appears, by common usage, and by evaluating it in the perspective of its historical usage, we hold that the phrase which prohibits a councilmember from holding any other municipal office or employment refers only to municipal offices or employment with the city of Sylvania.

Because of our holding above, we need not reach the constitutional issues relator has raised.

On consideration whereof, we find that relator was lawfully elected to the office of Sylvania city councilmember and that he is legally qualified to hold that office. We further find that the refusal of the Sylvania Council to seat relator was unlawful as was the appointment of respondent in his stead. We, therefore, grant his petition for a writ of quo warranto, and order that respondent remove himself from the council seat rightfully belonging to relator and that relator be returned to his rightful office. It is ordered that respondent pay the court costs of this action.

*Writ granted.*

HANDWORK, P.J., and GLASSER, J., concur.

---

5. The original position of the Attorney General's Office was that if one political subdivision contracted with another, the likelihood of a conflict of interest between common employees and officers of the two subdivisions was greater than if there were no contractual entanglements. This position has since been reversed. See 1979 Ohio Atty.Gen.Ops. No. 79–111.