[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 258.]

**IN RE ELECTION CONTEST OF DEMOCRATIC PRIMARY ELECTION HELD MAY 4, 1999 FOR NOMINATION TO THE OFFICE OF CLERK, YOUNGSTOWN MUNICIPAL COURT.**

[Cite as *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court*, 2000-Ohio-325.]

*Elections—Contest of election—Failure to remove name from ballot after candidate withdrew—Claim that validity of election was affected—Board of elections did not abuse its broad discretion in not removing candidate's name from the ballots and did not violate R.C. 3513.30(E), when—Court of common pleas' judgment affirmed.*

(No. 99-1941—Submitted February 8, 2000—Decided March 29, 2000.)

APPEAL from the Court of Common Pleas of Mahoning County, No. 99 CV 1389.

———————————

{¶ 1} The names of the following candidates appeared on the ballot for the May 4, 1999 Democratic Primary for the Clerk of the Youngstown Municipal Court: appellant, Rick Durkin; appellee, Sarah Brown-Clark; Charles P. Sammarone; Austin D. Kennedy; and Michelle A. Sexton. On Friday, March 26, 1999, thirty-nine days before the election, Sammarone delivered a written statement to the Mahoning County Board of Elections notifying the board of his withdrawal as a candidate and requesting the removal of his name from the May 4 primary election ballot. Under R.C. 3509.01, absentee ballots for the May 4 primary election had to be printed and ready for use on the thirty-fifth day before the primary election, *i.e.*, Tuesday, March 30, 1999.

{¶ 2} On March 26, when the board's then Deputy Director, Michael Sciortino, received Sammarone's withdrawal, he conferred with the printer about the feasibility of removing Sammarone's name from the ballot. The printer

informed Sciortino that as of that date, the absentee ballots for the election had already been printed and delivered to the board and that the regular ballots had practically all been printed but had not yet been delivered. The printer further advised Sciortino that on that late date, the ballots could not be reprinted to remove Sammarone's name in time for the absentee ballots to be ready for use at the primary election.

{¶ 3} Alternative methods of removing Sammarone's name from the ballot were also impracticable. For example, because Mahoning County uses an optical-scan ballot-counting system, placing stickers over Sammarone's name on the ballots was not a viable option because the stickers did not always remain on the ballots and had a tendency either to jam the ballot-counting machines and stop the counting process or cause the ballots to bend so they could not be fed through the machines. Marking over Sammarone's name on the ballots would not have necessarily completely concealed his name, could have led to an "overvote" when scanned by the ballot-counting machines, and would have been contrary to normal board instructions that poll workers never mark the ballots. The board also could not have used a different printer because there still would not have been enough time to reprint the ballots, and the board probably would have had to rebid the printing job. R.C. 3505.13.

{¶ 4} Sciortino then conferred with the board's director and some of the board members, all of whom concurred with his conclusion that the ballots could not be reprinted with Sammarone's name removed in time for the May 4 primary election. Instead of removing Sammarone's name from the ballots, the board placed in each absentee ballot envelope a yellow notice, which informed absentee voters that Sammarone had withdrawn from the municipal court clerk's race and that votes for him would not be counted. The board also placed at eye level in each individual voting booth an eleven-by-fourteen-inch sign, which specified the following in large, bold print:

"**IMPORTANT NOTICE**
**VOTES WILL NOT BE COUNTED**
**FOR**
**THE FOLLOWING CANDIDATE WHO**
**HAS WITHDRAWN FROM THE**
**MAY 4, 1999**
**PRIMARY ELECTION**
**CHARLES P. SAMMARONE,**
**YOUNGSTOWN CLERK OF**
**THE MUNICIPAL COURT.**"

{¶ 5} In addition, the board instructed poll workers to advise voters of Sammarone's withdrawal from the primary election and that votes for him would not be counted, and precinct advisors reiterated these instructions to poll workers on the May 4 primary election date. Sciortino notified a local newspaper, which published a story about Sammarone's withdrawal.

{¶ 6} Brown-Clark won the May 4 primary election with 4,849 votes, and Durkin received 4,533 votes. Sammarone received 830 votes, *i.e.*, more than the 316 votes that separated Brown-Clark from Durkin.

{¶ 7} On June 9, 1999, Durkin filed an election contest under R.C. 3515.08 in the Mahoning County Court of Common Pleas to challenge Brown-Clark's nomination. In his petition, as subsequently amended, Durkin alleged that the board's failure to remove Sammarone's name from the May 4 ballot pursuant to R.C. 3503.30(E) and Ohio Secretary of State Advisory No. 96-02 (entitled "Removal of Names of Withdrawn Candidates from the Ballot"), and its concomitant failure to adequately inform voters that Sammarone had withdrawn and that votes cast for him would not be counted, constituted an election irregularity and that this irregularity either affected the election outcome or rendered the result unreliable and uncertain. Durkin further alleged that the election irregularity was

"caused by the officers, agents, or employees of the Mahoning County Board of Elections." Durkin requested that the May 4, 1999 primary election be ruled void and that a special election be ordered. Brown-Clark and the board filed motions to dismiss. On July 27, after conducting a portion of the evidentiary hearing on Durkin's election contest, the common pleas court granted the motions and dismissed the election contest for failure to state a claim upon which relief can be granted.

{¶ 8} On appeal to this court under R.C. 3515.15, we reversed the judgment of the common pleas court and remanded the cause to that court for further proceedings. *In re Election Contest of Democratic Primary Election Held May 4, 1999 for Clerk, Youngstown Mun. Court* (1999), 87 Ohio St.3d 118, 717 N.E.2d 701. We held that Durkin's amended petition alleged the elements of an election contest with sufficient particularity to withstand dismissal under Civ.R. 12(B)(6).

{¶ 9} On remand, the common pleas court conducted a trial on Durkin's election contest. At the trial, Brown-Clark specifically objected to Durkin's attempts to introduce evidence and argument on unpled election irregularities, *e.g.*, the board's alleged failure to meet and make decisions regarding the withdrawal. At one point in the trial, Brown-Clark's attorney stated:

"Your Honor, I'm going to interpose an objection here similar to the one I made yesterday. Where [Durkin's counsel] is going with these questions, I think he wants to establish there is an irregularity * * * in the board as opposed to the board's staff doing or not doing certain things. That is not in the petition. The petitioner's name was not removed from the ballot. That's the only irregularity. We stipulate [that] the name wasn't removed from the ballot in terms of stickers or being blacked out. But he's trying to add, I think, additional irregularities here by saying that the board didn't vote on certain things."

{¶ 10} Further, during the trial, John F. Bender, the Chief Elections Counsel for the Secretary of State when R.C. 3501.30(E) was enacted and Secretary of State

4

Advisory No. 96-02 was promulgated, testified that the advisory was drafted in order to give some guidance to boards of elections after our holding in *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 50, 600 N.E.2d 656, 660, where we held that a statement of withdrawal of candidacy filed after absentee ballots had been mailed was sufficient to terminate the personal candidacy of the withdrawn candidate. Bender helped draft a recommendation regarding the withdrawal of candidates that was subsequently codified by the General Assembly in R.C. 3513.30(E), and he supervised the drafting of Secretary of State Advisory No. 96-02.

{¶ 11} According to Bender, despite the use of generally mandatory language like "shall" and "must" in the advisory, the Secretary of State's Office decided to draft Secretary of State Advisory No. 96-02 as an advisory rather than as a directive because these matters were intended to be committed to the broad discretion of boards of elections, and the Secretary of State was unable to predict each and every situation that might occur concerning a candidate's withdrawal from an election. Bender opined that if at the time of a candidate's withdrawal, the election was only thirty-nine days away, ballots could not be reprinted in that period of time, and stickers were not a viable option because of the problems they caused for the optical-scan ballot-counting system, removal of the withdrawn candidate's name was not required by statute or order of the Secretary of State and notification of electors of the withdrawal under the advisory would be sufficient to comply with the applicable election laws.

{¶ 12} On October 27, 1999, after the trial had been concluded, the common pleas court denied Durkin's election contest. The common pleas court reasoned that Durkin had failed to meet his burden of proving his contest by clear and convincing evidence:

"The members of the Board of Elections either as individuals or jointly took no action to remove the withdrawn candidate's name from the ballot, nor was the

Secretary of State consulted. Apparently, one or more Board of Election[s] employees made the decision that time constraints and count-machine limitations made removal of the name impracticable. This court does not opine on the validity of such action or non-action.

"The court holds that the mandatory language of R.C. 3513.30(E) is made less so by the words '…to the extent practicable…'. The provisions of 'C' and 'D' of the Secretary of State Advisory 96-2 were followed by the Mahoning [County] Board of Elections. Voters were warned and notified of the candidate's withdrawal and that votes for him would not be counted.

"There must be clear and convincing evidence that the election result is contrary to the will of the electorate. This race was not a two candidate race where the 'illegal,' the 'bad,' [or] the 'lost' vote was double the differential. The fact that 830 citizens of Mahoning County * * * either intentionally or negligently chose to waste their vote did not make the contestee's nomination uncertain or invalid."

{¶ 13} We subsequently denied Durkin's various motions pending his appeal from the common pleas court's judgment, including his motions to impound the ballots for the November 2, 1999 general election and to prohibit certification of the general election result. See 87 Ohio St.3d 1434, 718 N.E.2d 930, and 87 Ohio St.3d 1456, 720 N.E.2d 539. Brown-Clark ultimately won the general election for the office of Clerk of the Youngstown Municipal Court.

{¶ 14} This cause is now before the court upon a consideration of the merits of Durkin's appeal.

—————————

*Don L. Hanni* and *J. Gerald Ingram*, for appellant.

*Donald J. McTigue*, for appellee.

*Patrick J. Williams*; *Carr Goodson Warner*, *A Professional Corporation*, *M. Miller Baker*, *William J. Carter* and *Richard B. Rogers*, urging reversal for *amici curiae*, The Voting Integrity Project and Common Cause.

---

*Per Curiam.*

Election Contest:  Applicable Standards

{¶ 15} Durkin challenges the May 4, 1999 primary election for the office of Clerk of the Youngstown Municipal Court.  In evaluating Durkin's election contest, we are guided by several, well-established precepts.

{¶ 16} Initially, "courts should be very reluctant to interfere with elections, except to enforce rights or mandatory or ministerial duties as required by law." *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 480, 481, 692 N.E.2d 560, 562; *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 86, 1 OBR 122, 123, 438 N.E.2d 410, 411-412.

{¶ 17} Additionally, every reasonable presumption should be indulged in favor of upholding the validity of an election and against ruling it void.  *Copeland v. Tracy* (1996), 111 Ohio App.3d 648, 655, 676 N.E.2d 1214, 1218; *Beck  v. Cincinnati* (1955), 162 Ohio St. 473, 475, 55 O.O. 373, 374, 124 N.E.2d 120, 122.

{¶ 18} Moreover, an election result will not be disturbed unless the evidence establishes that the result was contrary to the will of the electorate.  *Portis v. Summit Cty. Bd. of Elections* (1993), 67 Ohio St.3d 590, 592, 621 N.E.2d 1202, 1203; *Mehling v. Moorehead* (1938), 133 Ohio St. 395, 408, 11 O.O. 55, 60, 14 N.E.2d 15, 21.

{¶ 19} In sum, "[t]he message of the established law of Ohio is clear:  our citizens must be confident that *their vote*, cast for a candidate or an issue, *will not be disturbed except under extreme circumstances that clearly affect the integrity of the election*." (Emphasis added.)  *In re Election of November 6, 1990 for the Office of Atty. Gen. of Ohio* (1991), 58 Ohio St.3d 103, 105, 569 N.E.2d 447, 450; *State ex rel. Billis v. Summers* (1992), 76 Ohio App.3d 848, 850, 603 N.E.2d 410, 411.

{¶ 20} More specifically, in order to prevail in his contest of the May 4, 1999 primary election, Durkin had to prove by clear and convincing evidence that

one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the primary election. *In re Election Contest of Democratic Primary Held May 4, 1999*, 87 Ohio St.3d at 119, 717 N.E.2d at 702, citing *In re Election of Nov. 6, 1990*, 58 Ohio St.3d 103, 569 N.E.2d 447, at syllabus. "Clear and convincing evidence" is " '[t]hat measure or degree of proof which is more than a mere "preponderance of evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222, 1223, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 21} With the foregoing standards in mind, we next consider Durkin's claimed election irregularities.

Unpled Irregularities

{¶ 22} On appeal, Durkin contends that an election irregularity occurred when the board failed to meet and act by majority vote on Sammarone's withdrawal, instead permitting its employees, *e.g.*, then Deputy Director Sciortino, to make decisions regarding the withdrawal. Durkin further claims that the board's failure to consult the Secretary of State concerning Sammarone's withdrawal constituted a separate election irregularity. In his amended election-contest petition, however, Durkin never alleged these election irregularities. Instead, Durkin alleged that the board's failure to remove Sammarone's name from the May 4 ballot pursuant to R.C. 3501.30(E) and Secretary of State Advisory No. 96-02 and the board's additional failure to adequately notify voters of the withdrawal were the sole election irregularities.[1]

---

1. Durkin does not claim on appeal that the board committed an election irregularity by not adequately notifying voters of Sammarone's withdrawal.

**{¶ 23}** Insofar as Durkin's amended petition did not set forth the election irregularities that he now claims on appeal, it did not comport with the requirements of R.C. 3515.09, which requires election-contest petitions to "set forth the grounds for such [election] contest." The procedures prescribed for election contests are specific and exclusive, and must be strictly construed. *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 414, 650 N.E.2d 859, 862.

**{¶ 24}** Durkin nevertheless relies on R.C. 3515.11 to assert that "it is judicially feasible to conform the pleadings to evidence" of additional election irregularities elicited during trial. R.C. 3515.11 provides that "[t]he proceedings at the trial of the contest of an election shall be similar to those in judicial proceedings, in so far as practicable, and shall be under the control and direction of the court * * * with power to order or permit amendments to the petition or proceedings as to form or substance." Civ.R. 15(B), which is generally applicable to civil judicial proceedings, governs amendments of pleadings to conform to the evidence tried by the parties, and provides:

"*When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.* Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended* and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. * * *" (Emphasis added.)

**{¶ 25}** We need not consider the merits of these additional claims. Durkin never sought to amend his petition to include these claims, Brown-Clark did not

expressly or impliedly consent to trial of these claims, and the trial court never considered whether these claims constituted election irregularities. See *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 391, 715 N.E.2d 179, 184; *State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 344, 699 N.E.2d 1271, 1276-1277. And despite Durkin's claims to the contrary, at the time he filed his amended petition he could have obtained the meeting minutes of the board that he eventually introduced as evidence at trial, which would have disclosed his claimed irregularities. Nor would any purported lack of access to supporting evidence until trial have precluded him from requesting the trial court to amend his petition to include these claims. In fact, when Brown-Clark objected to Durkin's attempts to litigate these unpled issues, Durkin failed to request leave from the trial court to amend his petition to include these additional claimed irregularities. Therefore, the common pleas court did not err by failing to determine these unpled claims.

### Failure to Remove Withdrawn Candidate's Name from Ballot

{¶ 26} Durkin's remaining claim, which he properly raised in his amended election-contest petition, is that the board's failure to remove Sammarone's name from the ballot constituted an election irregularity because it contravened R.C. 3513.30(E) and Secretary of State Advisory No. 96-02.

{¶ 27} After Sammarone withdrew from the primary election in accordance with R.C. 3513.30(B) and (D),[2] the board's duty was that set forth in R.C. 3513.30(E), which provides:

---

2. R.C. 3513.30 provides:
   "(B) Any person filing a declaration of candidacy may withdraw as such candidate at any time prior to the primary election, or, if the primary election is a presidential primary election, at any time prior to the fiftieth day before the presidential primary election. The withdrawal shall be effected and the statement of withdrawal shall be filed in accordance with the procedures prescribed in division (D) of this section for the withdrawal of persons nominated in a primary election or by nominating petition.
   " * * *

10

"*When a person withdraws* under division (B) or (D) of this section, *the board of elections shall remove the name of the withdrawn candidate from the ballots to the extent practicable in the time remaining before the election and according to the directions of the secretary of state*. If the name is not removed from all ballots before the day of the election, the votes for the withdrawn candidate are void and shall not be counted." (Emphasis added.)

{¶ 28} When construing a statute, our paramount concern is the legislative intent in enacting the statute. *Yonkings v. Wilkinson* (1999), 86 Ohio St.3d 225, 227, 714 N.E.2d 394, 396. In determining the legislative intent, we first review the statutory language and the purpose to be accomplished. *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217, 1218.

{¶ 29} Under the plain language of the statute, R.C. 3513.30(E) expressly limits the board's duty to remove the name of a withdrawn candidate from ballots "to the extent practicable in the time remaining before the election." Whether it is practicable to remove a withdrawn candidate's name from ballots in the time remaining before the election is an issue vested within the discretion of boards of elections. See *State ex rel. Ohio Assn. of Pub. School Emp. v. Girard Civ. Serv. Comm.* (1976), 45 Ohio St.2d 295, 297, 74 O.O.2d 463, 464-465, 345 N.E.2d 58, 60, where we held that comparable language in R.C. 124.31 requiring promotions in the classified service to be based upon merit, "to be ascertained as far as practicable by promotional examinations," vested the question of whether promotional examinations were practicable initially in the civil service commission.

---

"(D) * * * Such withdrawal may be effected by the filing of a written statement by such candidate announcing the candidate's withdrawal and requesting that the candidate's name not be printed on the ballots. * * * If such candidate's declaration of candidacy * * * was filed with a board of elections, the candidate's statement shall be addressed to, and filed with such board."

{¶ 30} This interpretation furthers the purpose of R.C. 3513.30(E), which the then Secretary of State's Chief Elections Counsel, who helped draft the provision, testified was to confer broad discretion on boards of elections to handle ballot-removal issues in candidate-withdrawal cases.

{¶ 31} The evidence establishes that the board did not abuse its discretion under R.C. 3513.30(E) by determining that it was not practicable to remove Sammarone's name from the ballots. The term "abuse of discretion" connotes an unreasonable, arbitrary, or unconscionable decision. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 730, 654 N.E.2d 1254, 1256. At the time that Sammarone withdrew from the primary election, there was insufficient time to reprint the ballots to remove his name. In addition, because Mahoning County uses optical-scan ballot-counting machines, neither placing stickers on nor marking over his name on the ballots was feasible. Given these circumstances, the board's decision was neither unreasonable, arbitrary, nor unconscionable.

{¶ 32} Secretary of State Advisory No. 96-02 does not require a contrary result. The advisory states that "[i]f a certified candidate withdraws in writing prior to thirty-five (35) days before a primary or general election * * *, a board of elections must reprint all ballots without the name of the withdrawn candidate, or otherwise remove the name of the withdrawn candidate from existing ballots by use of stickers or another method adopted by the board." But the opinion was drafted as an *advisory* rather than as a *directive*. In addition, as specified by the official under whose direction the advisory was issued, despite the use of language normally considered mandatory, the advisory merely provided guidance and was not mandatory. Finally, a contrary conclusion would nullify the "to the extent practicable" clause in R.C. 3513.30(E). See *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 232, 685 N.E.2d 754, 760 (" 'We must construe statutes to avoid unreasonable or absurd results.' "); *In re Election of Member of Rock Hill Bd. of*

*Edn.* (1996), 76 Ohio St.3d 601, 609-610, 669 N.E.2d 1116, 1123 (board of elections could not rely on Secretary of State advisory that erroneously interpreted election statute).

{¶ 33} Moreover, after the board determined that it was impracticable to remove Sammarone's name from the ballots given the proximity of the election, it diligently proceeded to notify electors that Sammarone had withdrawn as a candidate and that votes for him would not be counted. Notices were placed in each absentee-ballot envelope and individual voting booth, a local newspaper reported the withdrawal, and poll workers were instructed to verbally inform voters of the withdrawal.

{¶ 34} Based on the foregoing, the board did not abuse its broad discretion in not removing Sammarone's name from the ballots, and it did not violate R.C. 3513.30(E). Durkin failed to establish by the requisite clear and convincing evidence that one or more election irregularities occurred. Therefore, we need not determine the second prong of the election-contest test, *i.e.*, whether the claimed irregularity or irregularities affected enough votes to change or make uncertain the result of the primary election.

{¶ 35} We note, however, that to the extent Durkin and *amici curiae* claim entitlement to a new election, that relief is not available in an election contest. *Hitt v. Tressler* (1983), 7 Ohio St.3d 11, 12, 7 OBR 404, 405, 455 N.E.2d 667, 667-668, quoting *Hitt v. Tressler* (1983), 4 Ohio St.3d 174, 178, 4 OBR 453, 457, 447 N.E.2d 1299, 1304, fn. 10 ("[A] court is without jurisdiction to order an election in [an election-contest] case in the absence of legislative authority.").

Conclusion

{¶ 36} Because Durkin did not establish any election irregularity by the board's actions on the Sammarone withdrawal, the common pleas court properly denied the writ. This is not a case in which "extreme circumstances" manifestly affected the "integrity of the election." *In re Election of November 6, 1990*, 58

Ohio St.3d at 105, 569 N.E.2d at 450. Instead, the board acted diligently and properly exercised its statutory discretion by keeping Sammarone's name on the ballot and notifying the electors of his withdrawal. Accordingly, we affirm the judgment of the court of common pleas.[3]

*Judgment affirmed.*

Moyer, C.J., Resnick, F.E. Sweeney, Pfeifer, Cook AND Lundberg Stratton, JJ., CONCUR.

DOUGLAS, J., not participating.

_____

_____

3. Given this disposition, we also need not consider the merits of Brown-Clark's alternate assertion that Durkin's claims are barred by estoppel, a ground not relied upon by the trial court in denying the contest. See *In re Contested Election of Nov. 2, 1993*, 72 Ohio St.3d at 414, 650 N.E.2d at 862.