[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 385.]

THE STATE EX REL. TAXPAYERS COALITION ET AL. *v.* CITY OF LAKEWOOD ET AL.

[Cite as *State ex rel. Taxpayers Coalition v. Lakewood*, 1999-Ohio-114.]

*Public records—Mandamus to compel city of Lakewood to provide relator with various records relating to the enterprise fund of the Lakewood Water Department—Writ denied, when—Request for attorney fees denied, when.*

(No. 98-2295—Submitted July 28, 1999—Decided September 8, 1999.)

IN MANDAMUS.

_____

{¶ 1} On September 10, 1998, relator Elizabeth Koululias requested that respondent Lakewood Finance Director Yvette Ittu make thirteen categories of records relating to the enterprise fund of the Lakewood Water Department available for Koululias's review, inspection, and copying on September 11. The requested records included "[a]ny and all operating and financial statements for the Water Fund, including statement of revenues and expenditures for the Water Administration, Water Distribution, and Water Meter Divisions for the Water Fund, and the balance sheet or statement of financial position for the Water Fund, for years 1991 until present," and "[a]ny and all payroll records for the Water Fund, the Water Administration, Water Distribution, and Water Meters Divisions, showing the employees, the wages and salaries paid, and job classification, including such forms as W-2's, from 1991 until present."

{¶ 2} During the afternoon of September 10 and the morning of September 11, Finance Director Ittu and her employees assembled as many of the requested records as possible in the limited time specified in the request and placed the myriad of records in a conference room. Koululias, Mauricia Van de Kerkoff, and their

attorney, Gerald W. Phillips, reviewed some of the assembled records on September 11.

**{¶ 3}** Sara J. Fagnilli, who was the Lakewood Law Director at that time, told them that some of the requested records were being used and could be provided as soon as they were no longer being used, that some of the provided records duplicated other records requested, and that these other records, which supported and detailed the records made available, could also be provided. Fagnilli further informed Koululias, Van de Kerkoff, and Phillips that some of the requested records were in the office of the Clerk of City Council. Phillips and his clients acknowledged that the records they requested were voluminous and that not every item requested could be made available on such short notice.

**{¶ 4}** After reviewing the records on September 11, Phillips advised Fagnilli that he and his clients had not finished their review and would return on September 14 to review the records as well as additional records that could then be made available. Fagnilli told Phillips that records being used for a city council committee meeting the evening of September 14 would be made available immediately after that date.

**{¶ 5}** On September 14, 1998, Lakewood Mayor Madeline A. Cain and Ittu made presentations at the city council committee meeting concerning an initiative petition for an ordinance to submit the issue of repealing the monthly water customer service charge to the municipal electors at the November 1998 election.[1] Neither the mayor nor the finance director made notes related to their September 14 presentations. Written handouts of the mayor and finance director's presentations were made available at the meeting to certain individuals. During the

---

1. Relators supported and respondents opposed Issues 45 and 46, which were placed on the ballot for the November 3, 1998 municipal election. Issue 45 proposed a charter amendment requiring voter approval of, *inter alia*, increases in municipal income taxes or the water customer service charge. Issue 46 proposed an ordinance repealing the Lakewood monthly water customer service charge.

meeting, Fagnilli said that the city had retained private counsel to provide legal advice about the initiative petition and a proposed charter amendment and that the city had incurred approximately $2,000 in legal fees at that time.

{¶ 6} Despite Phillips's representations that he and his clients would return to review the requested records on September 14, they did not contact Fagnilli to establish a time to review these records. On September 18, the records were returned to their respective city departments.

{¶ 7} On October 1, 1998, Koululias requested that Ittu provide access to eleven additional categories of records, including the presentations made by the mayor and the finance director on September 14 "and any and all information, data, notes, and documents used, related to, and associated with the preparation" of their presentations, "[a]ny and all news releases, press releases, public notices, media releases, information packets, letters, correspondence, or communication issued, sent, or mailed by the City of Lakewood, or its employees or officials, including Dennis [*sic*] Dunn, to the newspapers, media, outside parties, or community organizations, pertaining to, related to, or associated with the Charter Amendment Petition or the Initiative Petition, now known as Issue[s] 45 and 46," and "[a]ny and all documents, records, invoices, letters, or correspondence pertaining to attorney fees incurred by the City of Lakewood related to, pertaining to, or associated with the Charter Amendment Petition or the Initiative Petitions, now known as Issue[s] 45 and 46." Koululias's request was also sent to Cain and Denis P. Dunn, the Executive Assistant to the Mayor for Community Relations.

{¶ 8} Phillips further advised Fagnilli that some of the records requested on September 10 had not been provided, to which Fagnilli responded that they had been made available in September and that she did not know which documents Phillips believed had not been made available. By agreement of the parties, Phillips and his clients reviewed records on October 9, 12, and 13, 1998, including thousands of pages of microfilm. Included in the records made available in this

period were copies of the mayor's and finance director's September 14 presentations, a binder of media releases, and the Lakewood Board of Control's approval of a city contract in an amount not to exceed $7,500 for private counsel to provide legal services relating to the petitions.

{¶ 9} On October 13, Koululias requested that Ittu, Cain, and Dunn provide her access to any mailing lists of entities and persons to whom Lakewood had issued news releases or information packets relating to Issues 45 and 46. Dunn provided Koululias with access to all mailing lists on October 15 and 28.

{¶ 10} On October 22, Phillips telephoned Fagnilli and requested to inspect the W-2 forms of water department employees for 1991-1997. Fagnilli advised Phillips that the city had previously provided access to its payroll records, which contained all of the information in the W-2s, except for Social Security numbers and deferred compensation deductions. Phillips told Fagnilli that he now wished to review the W-2 forms as a follow-up and agreed that it might take some time for the city to compile them for review.

{¶ 11} On October 23, Koululias sent a letter to Fagnilli referencing her previous public records requests of September 10, October 1, and October 13, and stating:

"To date, the following items on the above public records requests have not been provided:

"1) 9-10-98 request, Item 2 the ordinance providing for the temporary water rate reduction for the year 1996 only;

"2) 9-10-98 request, Item 5 the current operating financing statements for the year 1998;

"3) 9-10-98 request, Item 9 the W-2's for the water fund by departments;

"4) 10-1-98 request, Item 3 the supporting documents and records for Mayor Cain's testimony;

4

"5) 10-1-98 request, Item 4 the supporting documents and records for Finance Director Ittu's presentation;

"6) 10-1-98 request, Item 10 the documents, records, invoices, letters, and correspondence for attorney fees related to Issues 45 and 46, only the Board of Control approval was provided;

"7) 10-13-98 request, Item 1 the mailing list."

{¶ 12} According to Koululias, except for the items listed in her October 23 letter, respondents had given her access to all of the records in her numerous requests. On October 27, relator Taxpayers Coalition, a political action committee located in Lakewood, joined in Koululias's public records requests.

{¶ 13} On October 28, relators inspected additional public records, including the mailing lists and the 1998 financial statements. On October 29, Fagnilli notified relators that she had finished redacting exempt information from the requested W-2 forms and that they were available for review.

{¶ 14} On October 30, relators, Koululias and the Taxpayers Coalition, filed a complaint in this court for a writ of mandamus under R.C. 149.43, Ohio's Public Records Act, to compel respondents, Lakewood, Cain, Ittu, and Dunn, to provide them with access to the records specified in their September 10, October 1, and October 13 requests. Relators also requested attorney fees. Relators' complaint did not claim that some of the requested records that had been provided had not been timely made available for inspection. After mediation failed to resolve relators' claims, we granted an alternative writ and ordered the parties to submit evidence and briefs. 85 Ohio St.3d 1408, 706 N.E.2d 789.

{¶ 15} Following the filing of relators' complaint, they inspected the W-2 forms, which did not include the Social Security numbers and deferred compensation plan contributions of the water department employees. Relators also received from respondents copies of additional documents related to attorney fees expended by Lakewood concerning Issues 45 and 46, *i.e.*, an internal memorandum

dated September 28, 1998, from Fagnilli to the Board of Control recommending contract authority in the amount of $7,500 to the private attorney, and a November 11, 1998 invoice from the private attorney for $2,765.50 for legal services from August 1998 to November 1998 concerning the election matter. Finally, relators received copies of informational packets, cover letters, and some media releases that they claimed respondents had never provided. One of the informational packets on Issues 45 and 46 had been sent to an individual who was not on either of the provided mailing lists.

{¶ 16} This cause is now before the court for a consideration of the merits.

_____

*Phillips & Co., L.P.A.*, and *Gerald W. Phillips*, for relators.

*Calfee, Halter & Griswold L.L.P.*, *Albert J. Lucas* and *Stanley J. Dobrowski*; *Kevin M. Spellacy*, Lakewood Director of Law, for respondents.

_____

***Per Curiam.***

{¶ 17} Relators assert that they are entitled to a writ of mandamus to compel respondents to provide the requested records. More specifically, relators claim that (1) they never received mailing lists, notes related to Finance Director Ittu's September 14, 1998 presentation, notes prepared by Executive Assistant Dunn, and Social Security numbers and deferred compensation contributions on water department employee W-2 forms; (2) they received redacted W-2 forms, 1998 financial statements, and Mayor Cain's and Ittu's September 14 presentations from respondents before they filed this action, but that these records had not been timely made available to relators; (3) they received records concerning attorney fees incurred by Lakewood related to Issues 45 and 46 from respondents after they filed this action and that they had not been timely made available to them; and (4) that they received news releases, informational packets, and cover letters from third parties after they filed this action.

I. Failure to Provide Requested Records

{¶ 18} Relators' first contention that respondents failed to provide the requested mailing lists, notes, and unredacted W-2 forms is meritless. No additional mailing list or notes concerning Ittu's presentation existed, and respondents had no duty to create new documents to satisfy relators' records requests. *State ex rel. Kerner v. State Teachers Retirement Bd.* (1998), 82 Ohio St.3d 273, 275, 695 N.E.2d 256, 258. We are not persuaded that merely because the city sent an informational packet to an individual not on one of the provided mailing lists, another mailing list exists. Moreover, relators did not request access to Dunn's notes, and R.C. 149.43(C) requires a prior request as a prerequisite to a mandamus action. *State ex rel. Yant v. Conrad* (1996), 74 Ohio St.3d 681, 683, 660 N.E.2d 1211, 1213.

{¶ 19} In addition, respondents properly redacted both Social Security numbers and deferred compensation contribution amounts from the requested W-2 forms for water department employees. See R.C. 149.43(A)(1)(p); *State ex rel. WLWT-TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365, 1369; Ohio Adm.Code 145:1-1-01(C)(6) ("All information regarding a[(n) Ohio public employee's deferred compensation] account shall be confidential."); cf. *State ex rel. Jones v. Myers* (C.P.1991), 61 Ohio Misc.2d 617, 622, 581 N.E.2d 629, 631. Relators claim in their reply brief that they are merely asking for "names and addresses of the employees making employee deduction[s] for deferred compensation." But they never requested the names and addresses of employees making deferred compensation contributions, and the redacted information on the specific amounts contributed by the employees to deferred compensation plans is confidential under Ohio Adm.Code 145-1-1-01(C)(6).

B. Failure to Timely Provide Records Received Before Mandamus Action

{¶ 20} Relators next contend that, even though respondents provided access to redacted W-2 forms, 1998 financial statements, and Cain's and Ittu's September

14 presentations before relators filed this mandamus action, they are entitled to a writ of mandamus because respondents did not timely provide these records. Relators' claims, nevertheless, are moot because their complaint was limited to requesting access to records they contended had not been made available, and such access was provided before they filed this action. See, generally, *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 382, 700 N.E.2d 12, 15; *State ex rel. Warren v. Warner* (1999), 84 Ohio St.3d 432, 433, 704 N.E.2d 1228, 1229.

{¶ 21} Relators assert that their claims are not moot because their complaint gave "notice" of their timeliness claims and that our decision in *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 689 N.E.2d 25, requires a consideration of their claims. These claims are unpersuasive.

{¶ 22} S.Ct.Prac.R. X(4)(B) requires the pleading of specific facts in mandamus actions in this court rather than unsupported conclusions. *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 26, 661 N.E.2d 180, 183. In addition, relators' complaint does not contain even unsupported conclusory allegations concerning their timeliness claims. *Wadd*, in which we held that a timeliness issue in a public records case was not moot, is inapposite. The relator in that case expressly included such a claim in his complaint and specifically requested therein a writ of mandamus to compel Cleveland and its police chief to provide access to motor vehicle accident reports within eight days after accidents occur. 81 Ohio St.3d at 51, 689 N.E.2d at 27.

{¶ 23} We, therefore, need not consider the merits of relators' claims relating to the timeliness of respondents' provision of these records. Relators could have, but did not, raise these claims in their complaint, they did not file a motion to amend their complaint, and the parties submitted evidence on the same date. Respondents have also not expressly or impliedly consented to trial of these claims under Civ.R. 15(B). See, generally, *State ex rel. Massie v. Gahanna-Jefferson Pub. Schools Bd. of Edn.* (1996), 76 Ohio St.3d 584, 589, 669 N.E.2d 839, 843; *State ex*

*rel. BSW Development Group v. Dayton* (1998), 83 Ohio St.3d 338, 344, 699 N.E.2d 1271, 1276-1277.

{¶ 24} Nevertheless, even if relators' complaint could be construed to have raised these claims or respondents' actions in submitting some evidence and argument on the timeliness question constitute implied consent to trial of this issue, we find that respondents acted with the requisite promptness under R.C. 149.43(B) in giving respondents access to these records.

{¶ 25} Relators' conduct reasonably led Fagnilli to believe that they were no longer interested in inspecting the W-2 forms until relators' counsel advised her otherwise on October 22. Then she promptly assembled the forms, redacted exempt material, and made them available to relators for inspection on October 29.

{¶ 26} The 1998 financial statements had been initially made available for review the week following the September 14 city council committee meeting. Relators' failure to inspect these records earlier than they did was largely attributable to their own inaction as well as their failure subsequently to advise respondents that they still wanted to inspect these records. See *State ex rel. Logan Daily News v. Jones* (1997), 78 Ohio St.3d 322, 324, 677 N.E.2d 1195, 1197; *State ex rel. Fant v. Tober* (May 20, 1993), Cuyahoga App. No. 63737, unreported, 1993 WL 173743, affirmed (1993), 68 Ohio St.3d 117, 623 N.E.2d 1202 ("[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue."). Relators' September 10 request sufficiently requested access to W-2 forms, but their subsequent conduct made it unclear until October 22 that they still wished to review them.

{¶ 27} Respondents also provided access to Cain's and Ittu's September 14 presentations within a reasonable time after relators' October 1 requests. Relators erroneously assert that such access was untimely because relators should have been provided copies on September 14. Relators introduced no evidence that *they* requested these records at that time. Instead, they refer only to general requests by

unspecified "members of the public" on that date. See, *e.g.*, R.C. 149.43(B) and (C); *Yant*, 74 Ohio St.3d at 683, 660 N.E.2d at 1213. Therefore, respondents acted without delay and with reasonable speed in providing relators access to these requested records. *Wadd*, 81 Ohio St.3d at 53, 689 N.E.2d at 28.

C. Records Obtained Following Commencement of Mandamus Action

{¶ 28} Relators' remaining claim that they did not receive a few of the requested records until after they had instituted this action is also moot. *State ex rel. Russell v. Thomas* (1999), 85 Ohio St.3d 83, 84-85, 706 N.E.2d 1251, 1253. Relators do not claim that they now desire additional copies of records that they have since received from other sources.

{¶ 29} In addition, respondents had no duty to provide access to records related to attorney fees that either were covered by the attorney-client privilege, *Nix*, 83 Ohio St.3d at 383, 700 N.E.2d at 16, or did not exist at the time of relators' records requests. *State ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376, 378-379, 544 N.E.2d 680, 683 (no duty under R.C. 149.43 to supplement responses with after-acquired information). Fagnilli's comment at the September 14 city council committee meeting that approximately $2,000 in attorney fees had been expended did not mean that there were other public records responsive to relators' request. Moreover, relators did not raise their argument that the Lakewood Board of Control violated R.C. 121.22 in their complaint.

{¶ 30} Respondents also introduced evidence that all existing news releases, information packets, and cover letters were promptly made available to relators for their review.

{¶ 31} In sum, relators have not established that they are entitled to the requested extraordinary relief in mandamus. Respondents acted responsibly and with the requisite diligence in responding to relators' numerous requests. The vast majority of these records was made available to relators before the institution of this action. Consequently, we deny the writ and deny relators' request for attorney

fees. *Logan Daily News*, 78 Ohio St.3d at 324, 677 N.E.2d at 1197 (relator was not entitled to attorney fees because his action was largely meritless).

*Writ denied.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————