[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 58.]

THE STATE EX REL. CONSUMER NEWS SERVICES, INC. *v.* WORTHINGTON CITY

BOARD OF EDUCATION ET AL.

[Cite as *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of*

*Edn.*, 2002-Ohio-5311.]

*Public records—Mandamus sought to compel Worthington City Board of*

*Education to provide access to requested public records in the future*

*without delay in accordance with R.C. 149.43(B)(1)—Writ granted—*

*Request for attorney fees granted.*

(No. 2002-0131—Submitted August 27, 2002—Decided October 16, 2002.)

IN MANDAMUS.

_____

**Per Curiam.**

{**¶1**} Relator, Consumer News Services, Inc. ("CNS"), publishes ThisWeek Newspapers for 22 communities in central Ohio, including ThisWeek Worthington for the city of Worthington. ThisWeek Worthington is distributed to residents and businesses of the Worthington area every Wednesday and covers matters of local interest, e.g., the Worthington City School District. Candace Brooks is a staff writer for ThisWeek Worthington.

 Previous Requests for Public Records from the Worthington City School District

{**¶2**} On April 10, 2000, Brooks requested that Gregory Viebranz, the communications director for the Worthington City School District, provide her with the names and resumes of candidates for the position of superintendent of the school district. As part of his duties as communications director, Viebranz responds to requests for public records. On April 11, 2000, Viebranz advised Brooks that the school district would not release the candidates' names and resumes until after the final interview. This decision was based in part on the school district's desire to

protect the candidates' privacy in case anybody decided to withdraw from consideration. A subsequent written request by Brooks for these records on April 11 did not result in release of the records. It was only after CNS's counsel sent a letter threatening a public-records mandamus action that the school district provided the requested names and resumes on the evening of April 11, 2000.

{¶3} In October 2000, Brooks requested access to a settlement agreement between the school district and a teacher who had sued the district for racial discrimination. The school district refused Brooks's and the Columbus Dispatch's requests for access to the agreement. The school district provided access to the requested records after the Columbus Dispatch filed suit.

{¶4} In May 2001, Brooks again requested that the school district provide her access to the records relating to the settlement of a separate lawsuit against the district. After numerous requests and the passage of two months, the school district finally provided the records in July 2001.

Candidates for Treasurer

{¶5} In 2001, the school district hired a new treasurer, but after subsequently discovering that she did not have the required state treasurer's license to hold the office, the school district dismissed her in November 2001.

{¶6} The Worthington City School District Board of Education retained Ohio Association of School Business Officials ("OASBO") to assist and advise the board in hiring a new treasurer. Pursuant to the agreement, OASBO posted the position, collected responses, and presented them to the board. OASBO received sixteen resumes in response to the posted vacancy.

{¶7} At an executive session held at a board meeting on January 8, 2002, the board narrowed the field of candidates from sixteen to the five applicants it wanted to interview. On January 14 and 19, 2002, the board held special meetings and interviewed the five candidates in executive sessions. Two applicants were interviewed on January 14 and three applicants were interviewed on January 19.

The superintendent of the school district advised each candidate interviewed that if there was a public-records request for his or her application, the superintendent would advise him or her before his or her records were disclosed. The board took no action during the meetings on January 14 and 19 to further narrow the five-candidate field. The board scheduled a meeting for January 24, 2002, to reduce the field.

Requests for Names and Resumes of Candidates for Treasurer

**{¶8}** On January 14, 2002, Viebranz left Brooks a voice-mail message advising her that the board would interview the finalists for treasurer at executive sessions on January 15[1] and 19, 2002. Viebranz left the message in order to comply with the media-notification requirement of the Sunshine Law. R.C. 121.22(F).

**{¶9}** Around 4:00 p.m. on Friday, January 18, 2002, Brooks left a voice-mail message for Viebranz, requesting the names and resumes of the finalists who had been interviewed by the board on January 14 and who would be interviewed on January 19. Viebranz did not receive the request that day because he had left his office. The administrative offices of the school district were closed on Saturday, January 19, and Sunday, January 20, and on Monday, January 21, 2002, in observance of Martin Luther King Jr. Day.

**{¶10}** On January 21, 2002, Brooks sent a written request by facsimile to Viebranz for these records:

**{¶11}** "I am requesting the names and identiftying [sic] information (resumes) of the top candidates for the position of Treasurer of Worthington Schools. In a telephone message left from you to me last week, you indicated the Worthington Board of Education was about to begin interviewing finalists for the position. I would like the names and background information on all those who were asked to interview.

---

1. The initial interview date for the first two of the final five candidates was actually January 14, not January 15.

**{¶12}** "The information I am requesting is a public record as described in Section 149.43 of the Ohio Revised Code. * * *

**{¶13}** "I am requesting the records be made available to me by the end of the business day (5 p.m.) Tuesday, Jan. 22, 2002.

**{¶14}** "*Please send me copies of the information by fax (841-0436), deliver by [sic] to my office in person, or inform when I may come to your office to inspect the records. Also, please inform of any fee associated with making these records available.*" (Emphasis added.)

**{¶15}** On that same day, which was the Martin Luther King Jr. holiday, Brooks left another voice-mail message requesting the resumes of the applicants who had been interviewed on January 14 and 19, 2002. Brooks made multiple requests for the records because she wanted to be certain that her requests were heard and read by Viebranz as early as possible on the morning of Tuesday, January 22, 2002, so that Brooks could meet her Tuesday evening deadline for the Wednesday, January 23 edition of ThisWeek Worthington.

**{¶16}** On the morning of January 22, 2002, Viebranz received Brooks's requests, and he called Brooks to tell her that he would provide her with the requested records by the end of the day. Viebranz then contacted Superintendent Rick Fenton before 10:00 a.m. on January 22 about the requests because Fenton had the resumes of the treasurer applicants. Fenton called Board President Sue McNaghten, who had not been at the January 14 and 19 interviews, to determine what records were subject to the requests. Fenton and Viebranz construed Brooks's requests as asking for the names and resumes of finalists for the treasurer position, and McNaghten advised Fenton that as of January 22, there were only two finalists.

**{¶17}** McNaghten and Fenton believed that there were only two finalists even though the board had not acted during the open or executive sessions on January 14 and 19 to reduce the five-candidate field to two, McNaghten acknowledged that the private board deliberations to reduce the number of viable

4

candidates had to be conducted in executive session, McNaghten and Fenton had eliminated one of the candidates through a telephone conversation between themselves, McNaghten had not been present at either the January 14 or 19 interviews and meetings, Fenton was not a board member, and Fenton's conclusion that there were only two candidates was based on postmeeting discussions on January 19 involving less than a quorum of the board.

{¶18} At 4:30 p.m. on January 22, Viebranz received from Fenton the resumes of the two candidates that Fenton and McNaghten considered to be the finalists. Viebranz hand-delivered the two resumes to Brooks's office at 4:45 p.m. that day.

{¶19} Brooks received the two resumes and attempted to contact board members to prepare a story for the January 23 ThisWeek Worthington. After unsuccessfully attempting to contact McNaghten, Brooks contacted Board Vice-President Robert Horton. Horton informed Brooks that there had been five candidates interviewed, not two, and that the board had not yet narrowed the field of candidates. Horton further advised Brooks that the board was considering a meeting on January 24 to narrow the field to two candidates.

{¶20} Upon being informed of this discrepancy, Brooks contacted Viebranz and asked why she had not been provided all five resumes. Viebranz advised Brooks that he would contact Fenton. Brooks then left a voice-mail message for Fenton expressing her confusion about why she had received only two of the five requested resumes.

{¶21} Brooks next called board member Jennifer Best and asked why Fenton had not given her the five resumes of the candidates interviewed. Best confirmed that five candidates had been interviewed by the board and speculated that Brooks had not received more than two resumes because of the board's concern that candidates be notified before their resumes were publicly disclosed. Brooks then left another message with Fenton reiterating her request for the resumes of all

five candidates and advised that she needed the additional resumes by 10:00 p.m. that evening, January 22, to meet her deadline. Fenton received Brooks's two voice-mail messages on January 22 before he left for the day, but he did not make the additional three resumes available to Brooks on January 22, 23, or 24, 2002.

{¶22} When Brooks did not receive the additional resumes, she drafted a story for the Wednesday, January 23 edition of ThisWeek Worthington. Brooks's story, entitled "Names of 3 of 5 candidates are withheld," specified that she had requested the names and resumes of all candidates who had been interviewed for the treasurer position and that the names and resumes of three candidates had been withheld. After reading the January 23 article, Viebranz understood that Brooks wanted the resumes for all five applicants but instead of delivering the remaining resumes, the school district prepared a letter to the editor to respond to the article.

{¶23} Late on Thursday afternoon, January 24, 2002, Brooks again telephoned Viebranz and Fenton requesting the three withheld resumes. On that same day, CNS filed this action for a writ of mandamus to compel respondents, Worthington City Schools, Worthington City School District Board of Education, and Superintendent Fenton, to provide the requested records immediately. At the executive session during the January 24 special meeting, the board reduced the names of the candidates to two and ordered that OASBO arrange a second set of interviews for these candidates.[2]

{¶24} On January 25, 2002, Viebranz left Brooks a voice-mail message in which he stated that if she absolutely insisted on receiving the names of all of the people who had interviewed for the treasurer position, respondents would comply with that request, but that Brooks should withdraw her request because of concerns regarding publication of the other three candidates' interest in the position:

---

2. On February 14, 2002, the board hired Jonathan L. Boyd as the treasurer of the school district.

**{¶25}** "I think that what you're going to hear is a request to just leave it with those two names [that you received] for one reason only.  * * * [I]f you want the five, we'll give you the five, but that's the reasoning, that's the rationale, is because then these other three people are gonna have to go and explain why their name is in the paper as someone who was just, you know, taking a shot at looking for another job."

**{¶26}** On Monday, January 28, 2002, Viebranz received notice of CNS's mandamus action and later called Brooks to ask whether she still wanted the names and resumes of the other three candidates.  After Brooks said that she still wanted the requested resumes, Viebranz sent them by facsimile at 1:15 p.m. on that day.

School District Practice for Responding to Public-Records Requests

**{¶27}** The practice of the school district has been to make public records available on the same day that they were requested if it was reasonably practical.  Historically, the school district has made records available to Brooks by facsimile, hand delivery, or pickup at Viebranz's office.  Respondents concede that the records at issue in this case were not voluminous and could have been made available to Brooks on the same day that her requests were made.

Amended Complaint for Writ of Mandamus

**{¶28}** On February 5, CNS filed an amended complaint to compel respondents to "produce public records in the future *without delay*."  (Emphasis sic.)  CNS also requested an award of its "costs, and expenses, including attorneys' fees, incurred in filing this action."  Id.  Respondents filed a motion to dismiss, and CNS filed a motion for leave to amend its amended complaint to show that this mandamus action is being brought in the name of the state on its relation.

**{¶29}** In April 2002, we granted CNS's motion for leave to amend its amended complaint, denied respondents' motion to dismiss, and granted an alternative writ.  *State ex rel. Consumer News Serv., Inc. v. Worthington Bd. of Edn.*

(2002), 95 Ohio St.3d 1420, 766 N.E.2d 161.  The parties filed evidence and briefs.  This cause is now before the court for its consideration of the merits.

{¶30} CNS requests a writ of mandamus to compel respondents to produce public records in the future without delay.  Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43.  *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426-427, 639 N.E.2d 83.  In resolving CNS's claims, we must liberally construe R.C. 149.43 in favor of broad access and resolve any doubt in favor of disclosure of public records.  *State ex rel. Cincinnati Enquirer v. Krings* (2001), 93 Ohio St.3d 654, 660, 758 N.E.2d 1135.

Timeliness

{¶31} CNS challenges the timeliness of respondents' January 28, 2002 provision of the requested resumes to Brooks.  Because CNS specifically raised its timeliness claim in its amended complaint, this case was not rendered moot by respondents' eventual provision of the initially desired records.  *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52, 689 N.E.2d 25; cf. *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 391, 715 N.E.2d 179.

{¶32} Moreover, given the respondents' historical lack of diligence in complying with public-records requests by CNS, Brooks, and other members of the media, the issue of the timeliness of respondents' provision of public records is not moot because it is capable of repetition yet evading review.  *Wadd*, 81 Ohio St.3d at 52, 689 N.E.2d 25.

{¶33} This case consequently presents issues outside the general rule that mandamus will not issue to compel the general observance of laws in the future.  Cf. *State ex rel. Kirk v. Burcham* (1998), 82 Ohio St.3d 407, 409, 696 N.E.2d 582, and *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St.3d 158, 718 N.E.2d 426.  Respondents do not contend otherwise.

{¶34} As we have repeatedly emphasized, " '*When* records are available for public inspection and copying is often as important as *what* records are available.'

" (Emphasis sic.) *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 172, 724 N.E.2d 411, quoting *Wadd*, 81 Ohio St.3d at 52, 689 N.E.2d 25.

**{¶35}** R.C. 149.43(B)(1) provides that "all public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours" and that "upon request, a public office or person responsible for public records shall make copies available at cost, within a reasonable period of time."

**{¶36}** Respondents assert that they had no duty to promptly prepare records for inspection because CNS failed to present any evidence that it ever requested to inspect the resumes or that anyone from CNS ever arrived at respondents' offices to inspect them. But respondents ignore Brooks's January 21 facsimile, in which she specifically requested that respondents either send copies of the requested records by facsimile, deliver the copies to respondents in person, *or inform when she could come to respondents' offices to inspect the records*.

**{¶37}** To the extent that Brooks requested inspection of the records, respondents had a duty under R.C. 149.43(B)(1) to "promptly" prepare the records and make them available for inspection. Although the word "promptly" is not defined by applicable statute, its customary meaning is " 'without delay and with reasonable speed' " and this meaning " 'depends largely on the facts in each case.' " *Wadd*, 81 Ohio St.3d at 53, 689 N.E.2d 25, quoting Black's Law Dictionary (6th Ed.1990) 1214. Moreover, insofar as Brooks requested copies of the records, respondents had a duty to provide the copies within a reasonable period of time. R.C. 149.43(B)(1); cf., e.g., *Siegwald v. Curry* (1974), 40 Ohio App.2d 313, 318, 69 O.O.2d 293, 319 N.E.2d 381, quoting *Atwell v. State* (1973), 35 Ohio App.2d 221, 230, 64 O.O.2d 342, 301 N.E.2d 709, for the proposition that what is a " 'reasonable period of time' " to determine whether to take or refuse a chemical test in a DWI case will depend on " 'all the facts and circumstances in each case.' "

**{¶38}** Therefore, we must examine the pertinent facts to determine whether respondents acted within the required time to provide access to the requested resumes. Respondents claim that after considering all of the relevant facts, they fully complied with their duties under R.C. 149.43(B)(1). They assert that their six-day delay (four business days) from their receipt of Brooks's initial requests to their provision of all of the requested resumes was justified by (1) their reasonable interpretation of Brooks's ambiguous records requests, (2) the presence of only two final candidates for the treasurer position on January 22, 2002, (3) the fact that after January 22, 2002, Brooks's next publication deadline was not until January 29, 2002, (4) Brooks's failure to subsequently clarify her requests, and (5) respondents' reasonable attempts to seek clarification of Brooks's requests and to request that Brooks voluntarily withdraw her requests.

**{¶39}** For the reasons that follow, respondents' reasons for delaying compliance with relators' public-records request are meritless.

**{¶40}** First, respondents are public offices and officials for purposes of the Public Records Act. R.C. 149.43(A)(1) defines public records to include records kept by "school district units." R.C. 149.43(C) also authorizes mandamus actions against persons responsible for public records. "The law does not require that the action be brought against the person *ultimately* responsible for the records, but requires suit against *a person responsible for them*." (Emphasis sic.) *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St.3d 170, 174, 527 N.E.2d 1230. Superintendent Fenton had custody and control over the requested resumes when CNS requested them.

**{¶41}** Second, it is uncontroverted that the records sought by CNS, i.e., the resumes of the applicants who interviewed for the treasurer position, constituted public records that did not fit any recognized exemption from disclosure under R.C. 149.43. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 661 N.E.2d 187, and *State ex rel. Gannett Satellite Info. Network v. Shirey*

10

(1997), 78 Ohio St.3d 400, 678 N.E.2d 557, both holding that resumes and supporting documentation supplied by applicants for public employment are subject to disclosure under the Public Records Act.

{¶42} Third, CNS identified the records it wanted with sufficient clarity. Respondents claim that they reasonably interpreted Brooks's January 21 written facsimile request to be limited to names and resumes of candidates who were finalists for the treasurer position. " '[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " *Taxpayers Coalition*, 86 Ohio St.3d at 391, 715 N.E.2d 179, quoting *State ex rel. Fant v. Tober* (May 20, 1993), Cuyahoga App. No. 63737, 1993 WL 173743, affirmed (1993), 68 Ohio St.3d 117, 623 N.E.2d 1202. But Brooks's reference to "finalists" in her January 21 facsimile referred to Viebranz's earlier message that the board would begin interviewing finalists for the treasurer position on January 14 and 19. In other words, "finalists" meant the five candidates interviewed by the board. This is further evident from Brooks's statement in the January 21 facsimile that she "would like the names and background information *on all those who were asked to interview*." (Emphasis added.)

{¶43} Fourth, the evidence establishes that as of January 22, 2002, when respondents received Brooks's initial requests, the board had not yet reduced the field of candidates from five to two. In this regard, Board President McNaghten conceded that private board deliberations to narrow the list of viable candidates had to be conducted in executive session at a scheduled board meeting and that the board did not conduct an executive session narrowing the field of treasurer candidates from five before January 24. See, e.g., *State ex rel. Floyd v. Rock Hill Local School Bd. of Edn.* (Feb. 10, 1988), Lawrence App. No. 1862, 1988 WL 17190 ("The sunshine law does not permit deliberations concerning the employment of a public employee to be conducted during one-on-one

conversations. Such deliberations, if not held in public, must be held during an executive session at a regular or special meeting").

{¶44} Fifth, even assuming that respondents are correct that Brooks's January 21 written request was ambiguous and that as of that date, the board had narrowed the number of candidates to two, Brooks's numerous other requests and actions clarified that she wanted the resumes of all five of the treasurer candidates who had been interviewed by the board. Brooks's voice-mail messages on January 18 and January 21, both received by Viebranz on January 22, specifically requested the resumes of all of the candidates who had been and would be interviewed. Brooks's voice-mail message and phone call to Fenton and Viebranz on January 22 reiterated her requests for the resumes of all five candidates. Brooks's January 23 article specified that Brooks had requested all five resumes. Brooks further requested the three withheld resumes on January 24 and January 28. As of January 22, it should have been clear to respondents that Brooks wanted all five resumes. Consequently, Brooks did not fail to clarify her requests.

{¶45} Sixth, the fact that after January 22, 2002, Brooks's next publication deadline was not until January 29, 2002, did not authorize respondents to delay providing the requested records until January 28. It is not within the province of a public office or officer to determine for the requester when a requester's purpose in obtaining public records would best be served. Brooks's purpose in requesting to inspect and copy public records is irrelevant. "A person may inspect and copy a 'public record,' as defined in R.C. 149.43(A), irrespective of his or her purpose for doing so." *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 610 N.E.2d 997, syllabus; *State ex rel. Wilson-Simmons v. Lake Cty. Sheriff's Dept.* (1998), 82 Ohio St.3d 37, 40, 693 N.E.2d 789. Moreover, Brooks has other deadlines regarding her work, and she cannot wait to write all of her stories on the night of the publication deadline.

{¶46} Finally, respondents' further delay in providing access to the withheld resumes by asking that Brooks voluntarily withdraw her requests in consideration of the candidates' desire to keep their interest in the treasurer position confidential was inconsistent with their duties under R.C. 149.43(B)(1). Promises of confidentiality to applicants do not alter the public nature of resumes and documents submitted by applicants for public positions. *Shirey*, 78 Ohio St.3d at 403, 678 N.E.2d 557. Respondents concede that they could have accomplished the same thing by including a request not to publish the information with their timely provision of the records to Brooks.

{¶47} Therefore, respondents' claimed justifications for delaying the provision of access to the withheld resumes are meritless.

Mandamus

{¶48} In *Wadd*, 81 Ohio St.3d 50, 689 N.E.2d 25, the relator requested a writ of mandamus on a comparable timeliness claim, and under the facts of that case, we granted the writ to compel the city of Cleveland and certain city officials to prepare and provide access to motor vehicle accident reports within eight days after accidents occur. In so holding, we observed that the respondents in that case had previously provided access to the requested accident reports in a much shorter period of time than they did when relator filed his mandamus action. Id. at 53, 689 N.E.2d 25.

{¶49} Similarly, respondents' practice had been to provide public records on the same day that the request was received to the extent that records were readily available and not voluminous. The requested resumes here were readily available, not voluminous, and could have been provided to Brooks on January 22, 2002, i.e., the same day that her initial three requests were received. Instead, respondents delayed providing some of the requested records for reasons that are improper.

{¶50} In fact, respondents have a history of delaying compliance with comparable public-records requests.

{¶51} Based on the foregoing, we grant a writ of mandamus to compel respondents to provide access to requested public records in accordance with R.C. 149.43(B)(1).  We refuse, however, to grant the specific request by CNS that respondents provide public records "without delay," because the statutory standard "promptly" relates only to the right to inspection, and access to public records will ultimately be dependent upon the facts and circumstances of each request.

Attorney Fees

{¶52} CNS requests attorney fees.  We grant attorney fees for the following reasons.

{¶53} CNS has established a sufficient public benefit.  The public has an unquestioned public interest in the qualifications of potential applicants for positions of authority in public employment.  See, e.g., *Plain Dealer*, 75 Ohio St.3d at 36-37, 661 N.E.2d 187, quoting *Kenai v. Kenai Peninsula Newspapers, Inc.* (Alaska 1982), 642 P.2d 1316, 1324.  In addition, given the board's previous decision to hire a treasurer who lacked the requisite certification, the public interest in the qualifications of the applicants to succeed that treasurer was heightened.  Moreover, respondents have had a history of failing to timely comply with public-records requests, with an actual or threatened lawsuit often required before they comply with R.C. 149.43.

{¶54} Furthermore, respondents' delay in providing the records despite manifest requests for them was unjustifiable.  Respondents cannot withhold public records simply because they disagree with the policies behind the law permitting the release of these records.  See *Plain Dealer*, 75 Ohio St.3d at 36, 661 N.E.2d 187 ("the court has consistently rejected similar policy arguments as matters resolved by the General Assembly's enumeration of very narrow, specific exceptions to R.C. 149.43").

{¶55} Therefore, we grant CNS's request for attorney fees, and order it to submit a bill and documentation in support of the request, in accordance with the

14

guidelines in DR 2-106. This result is consistent with our awarding of attorney fees in comparable cases involving the disclosure of resumes submitted by applicants for public employment. See *Plain Dealer*, 75 Ohio St.3d at 38, 661 N.E.2d 187; *Shirey*, 78 Ohio St.3d at 404, 678 N.E.2d 557.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER and COOK, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., concur in judgment only.

LUNDBERG STRATTON, J., not participating.

———————————

Zeiger & Carpenter, L.L.P., John W. Zeiger, Marion H. Little, Jr., and Eva C. Gildee, for relator.

Bricker & Eckler, L.L.P., Randolph C. Wiseman, Nicholas A. Pittner and Warren I. Grody, for respondents.

———————————