[Cite as *State ex rel. Adams v. Ohio State Univ.*, 2020-Ohio-2843.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Bret Adams,     :

       Relator,               :

v.                            :          No. 18AP-1005

The Ohio State University,       :       (REGULAR CALENDAR)

       Respondent.        :

D E C I S I O N

Rendered on May 7, 2020

**On brief:** *Bret Adams*, pro se.

**On brief:** *Dave Yost*, Attorney General, *Ashley A. Barbone*, and *Todd Marti*, for respondent.

IN MANDAMUS

DORRIAN, J.

{¶ 1} In this original action, relator, Bret Adams, requests a writ of mandamus ordering respondent, The Ohio State University, to further comply with relator's public records request under R.C. 149.43.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court grant the requested writ of mandamus.

{¶ 3} No party has filed objections to the magistrate's decision. The case is now before this court for review.

{¶ 4}   No error of law or other defect is evident on the face of the magistrate's decision. Therefore, we adopt the findings of fact and conclusions of law contained therein. Accordingly, relator's request for a writ of mandamus is granted.

*Writ granted.*

SADLER, P.J., and BROWN, J., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Bret Adams, | : | |
| Relator, | : | |
| v. | : | No. 18AP-1005 |
| The Ohio State University, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 13, 2020

*Bret Adams,* pro se.

*Dave Yost,* Attorney General, *Jeffrey Knight,* and *Todd Marti,* for respondent.

IN MANDAMUS

**{¶ 5}** Relator, Bret Adams, filed this original action requesting a writ of mandamus ordering respondent, The Ohio State University ("OSU" or "University"), to comply more completely with relator's public records request under R.C. 149.43. Relator also seeks to recover statutory damages, attorney fees, and court costs pursuant to R.C. 149.43(C)(1)(b) and (C)(3)(b) based upon respondent's allegedly dilatory response to his initial public records request.

Findings of Fact:

**{¶ 6}** 1. Relator brings this action as a complaint for a writ of mandamus pursuant to Ohio's Public Records Act, R.C. 149.43, seeking a writ to compel OSU, to produce copies of public records that are within its possession, custody, or control.

{¶ 7}    2.  OSU is a public office as defined in R.C. 149.43(A)(1).

{¶ 8}    3.  OSU's principal facilities are located in Franklin County, Ohio.

{¶ 9}    4.  Jurisdiction and venue for an original action in mandamus lie with this court pursuant to the Ohio Constitution, Article IV, Section 3(B)(1)(b), R.C. 2731.02, and R.C. 149.43(C)(1)(b).

{¶ 10}  5.  Relator filed his complaint in mandamus on December 31, 2018.

{¶ 11}  6.  The complaint alleges that relator initiated his public records request on September 4, 2018 with an e-mail to Robert Moormann, the director of public records for OSU, and Scott A. Hainer, the public records program coordinator for OSU.  The complaint further alleges that both recipients of the e-mail work in the Office of University Compliance and Integrity.

{¶ 12}  7.  The September 4, 2018 e-mail requested all communications to or from Tim Pernetti, Andrew R. Judelson, Rick Barakat, Dan Barrett, and Ray DeWeese, and 14 university officers and employees.

{¶ 13}  8. The complaint describes DeWeese as a senior vice president with IMG College, LLC, a firm that provides sports marketing services for OSU.

{¶ 14}  9.  The public records request derives from relator's interest in advertising banners displayed at OSU's Ohio Stadium depicting former players in conjunction with a Honda automobile logo.

{¶ 15} 10. On September 10, 2018, Moormann responded to relator's September 4, 2018 e-mail by notifying relator that the university considered the request overbroad, and inviting relator to revise the request to narrow its focus.

{¶ 16} 11.  Relator submitted a modified request on September 10, 2018 reducing it to a request for correspondence between DeWeese and the 14 named university employees.

{¶ 17} 12.  Moormann responded that the renewed request was still overbroad and requested that relator produce key words and search topics to filter the correspondence.

{¶ 18} 13.  On September 13, 2018, relator e-mailed Moormann providing a list of 14 subjects and key words to apply to the requested DeWeese correspondence.

{¶ 19} 14. Moormann immediately responded to relator's list of topics and indicated that the university would now process the public records request.

{¶ 20} 15. Relator responded the same day with three added topics to be included.

{¶ 21} 16. Still on September 13, 2018, Moormann responded to the expanded subject list and reiterated that the university would screen the requested communications for privileged or non-disclosable information, and respond to the request. This e-mail summarized Moormann's understanding of relator's request:

> Just so we are on the same page, here are the full parameters of your request:
>
> All communications to or from Ray DeWeese with any of the following individuals or persons holding these titles from April 1, 2009 to Dec. 5, 2016:
>
> Gene Smith   Senior Vice President & Wolfe Foundation Endowed Athletics Director
>
> Joe Odoguardi   Senior Associate AD, Finance/CFO
>
> Dan Wallenberg   Assoc AD, Communications
>
> Doug Archie   Assoc AD, Compliance
>
> Andy DeVito   Director, Creative Services & Branding
>
> Pat Kindig   Assistant Athletics Director, Digital Assets
>
> Don Patko   Assoc AD, Facilities Operations
>
> Tyler Jones   Assistant Athletics Director, Fan Engagement
>
> Zach Swartz   Dir, Creative Media & Post Production
>
> Jim Null   Senior Associate AD, CIO Athletics & Business Advancement
>
> Julie Vannatta   Senior Associate AD, Legal Services
>
> Mary Lynn Readey   Associate Vice President
>
> Steve Malone   University Signage Coordinator
>
> Rick Van Brimmer   Trademarks and Licensing Director
>
> Regarding these subject matters:

Honda
Banner Program
Insurance
Spielman
Disabato
Adams
Litigation
Nike
McDonald's
Player programs
Former Players
Naming rights
Legal fees
Legal opinion
Sponsorship
Sponsorship Agreement

{¶ 22} 17. On October 15, 2018, Moormann sent an e-mail to relator updating relator on the progress of the university's response: "We have almost completed our initial review of the records and are moving as quickly as possible. Thanks for your patience."

{¶ 23} 18. On November 1, 2018, Moormann again provided an update by e-mail: "We are in our final stages of review. Thanks for your patience."

{¶ 24} 19. On December 13, 2018, the university provided its final response to relator's public records request, having reviewed and excluded exempt communications.

{¶ 25} 20. OSU's December 13, 2018 response contains 221 pages of e-mails dated November 6, 2016 to July 20, 2017. The public records request response does not contain any communications dated between April 1, 2009 and November 6, 2016. The great majority of e-mails included in the response note relator as a sender or addressee, or concern matters that relator was personally involved with in his work as an agent for a former OSU athlete.

{¶ 26} 21. OSU has a published six-year records retention policy for intellectual property rights documentation.

{¶ 27} 22. Relator asserts, and respondent does not refute, that the Honda advertising banners first appeared in Ohio Stadium no later than 2011, and remained in place at the time relator made his public records request.

{¶ 28} 23. The parties filed their stipulated evidence in the case, consisting primarily of the e-mail chain covering communications between relator and OSU, the 221

pages of records furnished in OSU's final response to the public records request, and Moormann's affidavit (the "February 20, 2019 Moormann affidavit") describing the response process.

{¶ 29} 24. The parties subsequently filed revised evidence containing the same 221 pages of records furnished earlier, with some of the redacted material restored. This later submission contains a further affidavit from Moormann (the "April 22, 2019 Moormann affidavit.").

{¶ 30} 25. The April 22, 2019 Moormann affidavit states as follows:

> [Two] On September 13, 2018, I began the search for, and review of, potentially responsive records. Utilizing University technology resources, I searched for all emails between Ray DeWeese and any one of the 14 individuals listed by Mr. Adams in his September 13, 2018 email. This search was not limited by keywords, as I wanted to capture the broadest possible swath of potentially responsive records. As expected, the search resulted in identifying several thousand potentially responsive records.
>
> [Three] Since the potentially responsive records were in native, Personal Storage Table (".pst") format, I was able to utilize a keyword search to further narrow the records sought by Mr. Adams. The keyword that I utilized was: "Honda". This keyword was chosen to in an effort to capture those records that I reasonably believed to be both of interest to Mr. Adams and responsive to his request.
>
> [Four] Having identified those records that contained the keyword "Honda," I continued my review to identify any information, records, or email that in any way pertained to the Honda banners at Ohio Stadium.
>
> [Five] Once my review was complete, I requested input from the necessary stakeholders across campus to ensure that all exempt information was properly redacted. This included seeking input from University attorneys who were better positioned to identify information exempt from disclosure pursuant to the attorney-client privilege, attorney work product, or both.
>
> [Six] When these reviews were complete, responsive, non-exempt records were produced to Mr. Adams on December 13, 2018.

> [Seven] Without using the limiting Honda search term and reviewing for documents that in any way pertained to the Honda banners at Ohio Stadium, the broad search terms provided by Mr. Adams would have resulted in thousands of emails and records completely unrelated to the subject matter of the Honda banners at Ohio Stadium.

Discussion and Conclusions of Law:

{¶ 31} Relator contends that OSU did not provide a timely response to his public records request. Relator also contends that the eventual response was necessarily incomplete, because the factual context of the matter makes it impossible that there were no communications regarding the banners earlier than November 6, 2016. Relator also complains that the documents furnished consist almost entirely of communications to which relator was a party, or at least privy.

{¶ 32} The magistrate first considers the completeness of OSU's response to relator's request. Relator argues that he requested documents for a 93-month time frame, and the university has produced documents responsive only to the last month of that time frame, when OSU's own records retention policy dictates that OSU should, at the least, have included all pertinent communications in the six years preceding relator's September 4, 2018 request.

{¶ 33} The purpose of the Ohio Public Records Act is to "expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro*, 80 Ohio St.3d 261 (1997), citing *State ex rel. WHIO-TV-7 v. Lowe*, 77 Ohio St.3d 350 (1997). Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so that government officials can be held accountable. *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 420 (1996).

{¶ 34} The appropriate remedy to compel compliance with Ohio's Public Records Act is an action in mandamus. R.C. 149.43(C)(1); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903. R.C. 149.43 should be construed liberally in favor of broad access to public records, and any doubt must be resolved in favor of disclosure. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374 (1996). R.C. 149.43(C)(1) provides for an award of statutory damages for undue delay in provision of the requested records, even if

the records sought were eventually provided. *State ex rel. McCray v. Ohio Dept. of Commerce,* 10th Dist. No. 11AP-1055, 2012-Ohio-2997. The timeliness of an agency's response "depends upon all the pertinent facts and circumstances." *State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, ¶ 10, citing *Consumer News Servs., Inc. v. Worthington Bd. of Edn.,* 97 Ohio St.3d 58, 2002-Ohio-5311, ¶ 37-38. Public offices must promptly prepare and transmit public records within a reasonable period of time. R.C. 149.43(B)(1). The word "promptly" is not defined in R.C. 149.43 or any other applicable statute. It must, therefore, be given its usual normal or customary meaning. *State ex rel. Wadd v. Cleveland,* 81 Ohio St.3d 50, 53 (1998).

{¶ 35} The requestor of public records must identify the records sought "with reasonable clarity," so that the public office can identify responsive records based on the manner in which it ordinarily maintains and accesses its records. *State ex rel. Zidonis v. Columbus State Community College,* 133 Ohio St.3d 122, 2012-Ohio-4228, ¶ 26, 33. *See also State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 17. Otherwise put, the Public Records Act does not require the public office to speculate regarding the selection of public records of specific interest to the requestor. *State ex rel. Thomas v. Ohio State Univ.,* 71 Ohio St.3d 245 (1994).

{¶ 36} Relator asserts that the narrow time frame covered by the university's responsive documents, on its face, demonstrates that the university did not make a good faith effort to locate documents described in relator's request.

{¶ 37} Moormann's affidavit described the process by which OSU attempted to sift related e-mails to respond to relator's request. OSU's brief does not identify any communication, or any averment in the affidavit of Moormann to explain why the responsive records cover only a single month of the 93 sought, or one topic ("Honda") of the 17 ultimately suggested by relator and acknowledged by Moormann in his September 13, 2018 e-mail to relator. OSU provides no explanation as to why older records, covered by its own record's retention policy, were not "responsive" to relator's request. The e-mails provided were selected as being communications between the parties identified in the public records request with the additional filter of having Honda in the subject or body of the e-mail. The university does not explain why this process could not have been applied to e-mails preceding those disclosed. It appears that the

university spontaneously narrowed the suggested search terms to Honda, considering the other search terms provided by relator to form an overbroad request. The university, however, does not explain why it narrowed the chronological scope of its response.

{¶ 38} Relator does not seriously dispute the timeliness of the university's response in this case. Relator, at best, expresses dissatisfaction: "OSU then delayed production for more than four months, which itself is probably a violation." (Relator's Brief at 21.) The magistrate concludes that OSU's response as it now stands was not unreasonably delayed, and as the case is now postured denies relator's demand for statutory damages and attorney fees. The magistrate further observes, however, that this determination may not preclude revisiting the fees and damages issue if OSU's response to the writ outlined below so warrants.

{¶ 39} A relatively timely, yet incomplete response to a public records request does not comport with R.C. 149.43. The magistrate therefore concludes that an appropriately tailored writ of mandamus is appropriate in the present case. The requested writ is granted to the extent that OSU shall provide a further, more detailed response to relator's public records request either furnishing documents included in the full chronological range of relator's request and covering all of relator's submitted search terms, or furnish a response to relator explaining why those documents do not exist, do not constitute public records, or are otherwise unavailable.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).