MCMILLAN, APPELLANT, *v.* ASHTABULA COUNTY
BOARD OF ELECTIONS ET AL., APPELLEES.

[Cite as *McMillan v. Ashtabula Cty. Bd.
of Elections* (1993), 68 Ohio St.3d 31.]

(No. 93–1121—Submitted September 22, 1993—Decided December 15, 1993.)

*Debra S. McMillan, pro se.*
*Gregory J. Brown,* Ashtabula County Prosecuting Attorney, for appellees.

DOUGLAS, J.   In the court of appeals, appellant (McMillan) set forth seventeen items of alleged irregularity in the November 3, 1992 election for the county

judgeship position. In her brief before this court, appellant concentrates on only four areas of alleged irregularity, arguing that she has satisfied her burden of demonstrating that enough votes were affected by the claimed irregularities to change or make uncertain the results of the election. We have considered appellant's arguments and conclude that appellant has failed to meet her burden under the standards set forth in *In re Election of November 6, 1990 for the Office of Attorney General of Ohio* (1991), 58 Ohio St.3d 103, 569 N.E.2d 447, wherein we held, in the syllabus:

"A contestor of an election held in Ohio must prove two facts by clear and convincing evidence to prevail: (1) that one or more election irregularities occurred, and (2) that the irregularity or irregularities affected enough votes to change or make uncertain the result of the election."

The claims of election irregularity asserted by appellant involve: (1) the board of elections' issuance of absentee voting ballots prior to our October 22, 1992 order; (2) the defacement of official voting device sheets; (3) the lack of pencils in voting booths; and (4) an alleged violation by appellee Wynn of the Code of Judicial Conduct. We will address each of these alleged irregularities *seriatim.*

## I

The first area of alleged irregularity involves the 1,259 absentee ballots issued to voters by the board of elections prior to October 22, 1992, which listed Kobelak as a candidate for county court judge. Appellant asserts as an irregularity "the failure of the Board of Elections to issue absentee ballots in accordance with * * * [this court's October 22, 1992] order to remove William Kobelak as sole candidate from the ballot[.]" However, we find, as did the court of appeals, that the board of elections complied with our October 22, 1992 order. Therefore, the matter raised by appellant does not constitute an election irregularity.

The absentee ballots at issue were printed and mailed before this court's October 22, 1992 order directing the board of elections not to place Kobelak's name on the ballot. Nothing prior to October 22, 1992 prohibited the board of elections from printing and mailing these absentee ballots to ensure that the ballots were received by absentee voters in a timely fashion. In fact, pursuant to R.C. 3509.01, absentee voter's ballots must be printed and ready for use thirty-five days before a general election. As soon as our October 22 order was received by the board of elections, new absentee ballots were printed with Kobelak's name removed from the ballot. No absentee ballots mailed to voters after October 22, 1992 listed Kobelak as a candidate for office.

Appellant suggests that between October 22 and November 3, 1992, the board of elections should have issued reprinted absentee ballots (with Kobelak's name removed) to those absentee voters who received ballots mailed by the board of

elections before October 22, 1992. In our judgment, the board of elections had no such obligation. Moreover, had this course of action been taken by the board of elections, absentee voters with two ballots could possibly have voted twice in the same election.

Furthermore, even if we were to find that an election irregularity occurred, nothing in the record before us suggests that appellant would have received *any* additional votes had Kobelak's name not appeared on the absentee ballots issued prior to October 22, 1992. In this regard, the six hundred eighty-six voters who cast a ballot in favor of Kobelak might have cast their vote for appellant's opponent had Kobelak's name not appeared on the ballot, or they might not have voted at all in the race between two write-in candidates. In any event, the fact remains that appellant was defeated in this election and that not enough votes were affected by the claimed irregularity to cast any doubt on the results of the election.

## II

The second area of alleged irregularity concerns the defacements of voting device sheets. The court of appeals held, and we agree, that the numerous defaced voting device sheets constituted an election "irregularity." Additionally, it is obvious that the defacements led to voter confusion since 1,381 attempted votes were registered by stylus beside the *title* of the office for county court judge. However, appellant has failed to demonstrate, by clear and convincing evidence, how many votes were actually affected by the irregularity, or how the irregularity might have affected the outcome of the election.

At the evidentiary hearing in the court of appeals, *one witness,* Jackie Kosenko, testified that a defacement confused her and that, consequently, she did not vote for appellant although she originally intended to do so. Conversely, other witnesses testified that they were able to cast a write-in vote for appellant despite defacements on voting device sheets. Appellant was also unable to demonstrate that any of the 1,381 attempted votes (by stylus) were intended votes for her, or that those voters who used the stylus on their ballots in the manner described did not also execute a valid write-in vote.

Accordingly, we find that appellant has failed to meet her burden of establishing, by clear and convincing evidence, that enough votes were affected by the irregularity to change or make uncertain the results of the election.

## III

The third item asserted as an election irregularity is the lack of pencils in private voting booths. R.C. 3501.29(A) provides, in part:

"The board of elections shall provide for each precinct a polling place and provide adequate facilities at each polling place for conducting the election. * * * Each voting compartment shall be provided at all times with black lead pencils, instructions how to vote, and other necessary conveniences for marking the ballot."

The evidence at the hearing established that poll workers in at least one precinct were instructed to remove pencils from private voting compartments in an attempt to stop electors from marking voting device sheets. Poll workers were further instructed to ask voters if they needed a pencil. Although the removal of pencils from voting compartments can technically be considered an election irregularity, the only evidence in the record concerning the effect of the irregularity was that Jackie Kosenko, who intended to vote for appellant, did not receive a pencil from poll workers. In this regard, we note that Kosenko did not request a pencil, and that other voters in other precincts who did request a pencil were provided with one.

Appellant urges us to infer that more than just one vote was affected by this irregularity. While such an inference may be justified, it was appellant's burden to *prove* by clear and convincing evidence that this irregularity, alone or in conjunction with other irregularities, affected enough votes to change or make uncertain the outcome of the election. Appellant failed to prove that necessary fact *on the record,* and mere inferences not fully supported by the evidence have no place in election contest cases.

## IV

The final matter raised by appellant as an election "irregularity" is an alleged violation by appellee Wynn of the Code of Judicial Conduct. However, no evidence was presented by appellant that even a single vote was affected by the claimed irregularity and, thus, we reject appellant's arguments in this regard.

## V

Having completed a thorough review of the record before us, we can find no clear and convincing proof of any election irregularity or irregularities that can be said to have affected enough votes to change or make uncertain the results of the election. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.