CRANE, APPELLANT, *v.* PERRY COUNTY BOARD

OF ELECTIONS ET AL., APPELLEES.

[Cite as *Crane v. Perry Cty. Bd. of Elections*,

107 Ohio St.3d 287, 2005-Ohio-6509.]

*Election contest — Voting irregularities — Digitized comparison signatures missing from signature book — Voters permitted to vote without signing — Signatures compared after election — Failure to prove that irregularities affected outcome of election.*

(No. 2005-0397 ─ Submitted September 20, 2005 ─ Decided

December 28, 2005.)

APPEAL from the Court of Common Pleas of Perry County,

No. 04-CV-00403.

_____

**Per Curiam.**

{¶ 1}  This is an appeal from a judgment denying an election contest.

{¶ 2}  On November 2, 2004, an election was held for the office of Auditor of Perry County, Ohio.  The candidates were the incumbent auditor ─ appellant, William Crane ─ and appellee Larry Householder.  On November 22, 2004, appellee Perry County Board of Elections certified that Householder had defeated Crane by a vote of 7,523 to 7,246, a margin of 277 votes.  Upon Crane's request, the board of elections conducted a recount.  On December 8, 2004, the board again declared Householder the duly elected auditor by the same margin of 277 votes.

{¶ 3}  In December 2004, Crane filed a petition in the Perry County Court of Common Pleas contesting the election.  Crane named the board and Householder contestees and requested that the election be set aside and declared

invalid. Crane claimed that a substantial number of persons cast votes illegally, including voters who did not sign the signature book and persons who were permitted to vote after signing the signature book although the signature book did not contain their digitized signatures.

{¶ 4} In January 2005, the common pleas court held a hearing on the election contest. No party requested a court reporter for the hearing, but an audiotape was made of the proceeding.

{¶ 5} The parties agree on and the court credited the following description of the proper voting procedure to be followed on election day. See R.C. 3505.18. Prospective voters in Perry County give their names to a poll worker, who writes the names in the poll book. The prospective voter must next sign his or her name in the signature book. The signature line is to the right of the person's digitized signature, which is taken from the board's official voter-registration records. A poll worker then verifies that the person's signature matches his or her digitized signature. If the signatures match, the poll worker issues a regular ballot to the voter and notes the ballot-stub number in both the signature and poll books. Poll workers should not issue a regular ballot to a voter without having the voter sign the signature book next to the voter's digitized signature. If a registered voter is listed in the signature book without a digitized signature, the poll workers should issue a provisional ballot rather than a regular ballot.

{¶ 6} At the hearing, Troy Bratz testified on behalf of Crane that he reviewed the Perry County poll books and signature books for the November 2, 2004 election. According to Bratz, he counted a total of 335 ballots cast without a digitized signature of the voter available for comparison, i.e., the signature books contained 335 signatures of persons that had no accompanying digitized signatures. Bratz further testified that there were a total of 362 missing signatures of people who showed up to vote on election day. He arrived at the figure by

subtracting the total of signatures in the signature books from the sum of the regular voters listed in the poll books. Included in this figure were 204 ballots with recorded stub numbers issued to voters listed in the poll books who did not sign a signature book. Bratz noted that if a person did not sign the signature book and no stub number was written in the book for that person, "you can't tell if the person voted or not" by looking at the signature book.

{¶ 7} Regarding the 335 ballots specified by Bratz as the number cast without a digitized signature available for comparison, Diane Pullman, the clerk of the board of elections, testified that before the hearing, she verified that all but 60 of the signatures of persons casting these ballots matched the voters' official signatures on file with the board. Pullman had not had time to check the remaining 60 signatures. Crane did not specifically object to Pullman's testimony, and he cross-examined her.

{¶ 8} Following the trial, Crane recalculated the total number of persons with missing signatures as 343 instead of 362. The difference evidently resulted from the board's posttrial provision of missing pages from the signature books.

{¶ 9} In February 2005, the common pleas court entered a judgment denying Crane's election contest. The court determined that the 204 ballots with no corresponding signature and the 60 unverified ballots should be rejected as irregular. The court concluded that because this 264-ballot total was less than the 277-vote margin of victory for Householder, Crane was not entitled to invalidate the election.

{¶ 10} This cause is now before us upon Crane's appeal as of right under R.C. 3515.15.

Oral Argument

{¶ 11} Appellant requests oral argument. We deny appellant's request for the following reasons.

3

**{¶ 12}** First, despite appellant's citation of R.C. 3515.15, that statute does not require oral argument in an appeal to this court in an election contest.

**{¶ 13}** Second, " 'S.Ct.Prac.R. IX(2) does not require oral argument in this appeal, and the parties' briefs are sufficient to resolve this case.' " *State ex rel. Pontillo v. Pub. Emp. Retirement Sys. Bd.*, 98 Ohio St.3d 500, 2003-Ohio-2120, 787 N.E.2d 643, ¶ 20, quoting *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 13.

**{¶ 14}** Third, this case does not raise constitutional questions, issues of legal or factual complexity, or a conflict between appellate courts. See *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 17-19.

**{¶ 15}** Fourth, notwithstanding appellant's claims, the issues raised are not necessarily of great public interest, as they center around factual disputes. As mentioned previously, the parties' briefs are sufficient for us to resolve the issues raised.

**{¶ 16}** Based on the foregoing, we deny appellant's request for oral argument.

Election Contest:  Applicable Standards

**{¶ 17}** Crane contests the November 2, 2004 election for the office of the Auditor of Perry County.  As we observed in *In re Election Contest of Democratic Primary Election Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 262-263, 725 N.E.2d 271, we are guided by the foregoing general standards:

**{¶ 18}** "Initially, 'courts should be very reluctant to interfere with elections, except to enforce rights or mandatory or ministerial duties as required by law.' *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 480, 481, 692 N.E.2d 560, 562; *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 86, 1 OBR 122, 123, 438 N.E.2d 410, 411-412.

**{¶ 19}** "Additionally, every reasonable presumption should be indulged in favor of upholding the validity of an election and against ruling it void. *Copeland v. Tracy* (1996), 111 Ohio App.3d 648, 655, 676 N.E.2d 1214, 1218; *Beck v. Cincinnati* (1955), 162 Ohio St. 473, 475, 55 O.O. 373, 374, 124 N.E.2d 120, 122.

**{¶ 20}** "Moreover, an election result will not be disturbed unless the evidence establishes that the result was contrary to the will of the electorate. *Portis v. Summit Cty. Bd. of Elections* (1993), 67 Ohio St.3d 590, 592, 621 N.E.2d 1202, 1203; *Mehling v. Moorehead* (1938), 133 Ohio St. 395, 408, 11 O.O. 55, 60, 14 N.E.2d 15, 21.

**{¶ 21}** "In sum, '[t]he message of the established law of Ohio is clear: our citizens must be confident that *their vote*, cast for a candidate or an issue, *will not be disturbed except under extreme circumstances that clearly affect the integrity of the election*.' (Emphasis added.) *In re Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio* (1991), 58 Ohio St.3d 103, 105, 569 N.E.2d 447, 450; *State ex rel. Billis v. Summers* (1992), 76 Ohio App.3d 848, 850, 603 N.E.2d 410, 411."

**{¶ 22}** In order to prevail in his election contest, Crane "had to establish by clear and convincing evidence that one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the * * * election." *Maschari v. Tone*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 21; see, also, *Moss v. Bush*, 104 Ohio St.3d 1443, 2004-Ohio-7119, 819 N.E.2d 1125 (Moyer, C.J., in chambers) ("Clear and convincing evidence is required to invalidate a contested election"). "Clear and convincing evidence" is " 'that measure or degree of proof which is more than a mere "preponderance of evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121,

122, 568 N.E.2d 1222, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

Irregularities

{¶ 23} Crane claims two irregularities: (1) the lack of digitized signatures in the Perry County signature books and (2) voters who did not sign their names in any signature book. Digitized signatures or original registration forms and electors' signatures are required by R.C. 3505.18, which mandates the following voting procedure:

{¶ 24} "When an elector appears in a polling place to vote he shall announce his full name and address to the precinct election officials. He shall then write his name and address at the proper place in the poll lists or signature pollbooks provided therefor * * *.

{¶ 25} "The elector's signature in the poll lists or signature pollbooks shall then be compared with his signature on his registration form or a digitized signature list * * * and if, in the opinion of a majority of the precinct election officials, the signatures are the signatures of the same person, the clerks shall enter the date of the election on the registration form * * *. If the right of the elector to vote is not then challenged, or, if being challenged, he establishes his right to vote, he shall be allowed to proceed into the voting machine. If voting machines are not being used in that precinct, the judge in charge of ballots shall then detach the next ballots to be issued to the elector from Stub B attached to each ballot, leaving Stub A attached to each ballot, hand the ballots to the elector, and call his name and the stub number on each of the ballots. The clerk shall enter the stub numbers opposite the signature of the elector in the pollbook. The elector shall then retire to one of the voting compartments to mark his ballots. No mark shall be made on any ballot which would in any way enable any person to identify the person who voted the ballot."

6

{¶ 26} "Election laws are mandatory and require strict compliance." *Moss v. Bush*, 104 Ohio St.3d 1429, 2004-Ohio-6794, 819 N.E.2d 711 (O'Connor, J., in chambers); *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 33.

{¶ 27} Therefore, as the trial court correctly concluded, Crane established by clear and convincing evidence that the lack of digitized signatures in some of the signature books and the failure to have some of the prospective voters sign their names in these books constituted election irregularities.

Effect of Irregularities:  Contestee's Submission of

Evidence on Lack of Digitized Signatures

{¶ 28} Crane asserts that once he established that an irregularity occurred because the signature books lacked 335 digitized signatures during the November 2, 2004 election and that this total exceeded Householder's margin of victory, the trial court was required to set aside the election.  Crane contends that the trial court erred in crediting the testimony of the board's clerk.  The clerk testified that she  verified all but 60 of the signatures for which there was no digitized signature in the signature book by comparing them to signatures on file with the board. Crane essentially claims that a contestee in an election contest is precluded from submitting evidence to rebut a contestor's claim that an irregularity or irregularities affected enough votes to change or make uncertain the result of the election.

{¶ 29} Crane's contention lacks merit.  Contestees in election contests have the right to present evidence in rebuttal.  For example, in *McMillan v. Ashtabula Cty. Bd. of Elections* (1993), 68 Ohio St.3d 31, 35, 623 N.E.2d 43, we noted that although defacements of voting-device sheets constituted an election irregularity, the contestor failed to demonstrate, by clear and convincing evidence, how many votes were actually affected by the irregularity or how the irregularity might have affected the outcome of the election because, in part, "witnesses

testified that they were able to cast a write-in vote for [the contestor] despite defacements on voting device sheets."

{¶ 30} Similarly, in *Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio*, 58 Ohio St.3d at 110-113, 569 N.E.2d 447, we credited testimony presented by the contestees to determine that the contestor did not establish by clear and convincing evidence that an election irregularity, namely improper ballot rotation, changed or made uncertain the results of the election.

{¶ 31} Moreover, the election-contest statutes envision the opportunity to submit testimony. See R.C. 3515.12 ("The court with which a petition to contest an election is filed may summon and compel the attendance of witnesses * * *. * * * The court may require any election officer to answer any questions pertinent to the issue relating to the conduct of the election or the counting of the ballots and the making of the returns. Any witness who voted at the election may be required to answer touching his qualification as a voter and for whom he voted"); *In re Election on the Issue of Zoning the Southeasterly Section of Swanton Twp.* (1982), 2 Ohio St.3d 37, 39, 2 OBR 581, 442 N.E.2d 758, fn. 1 ("There is no question that contestors-appellants had the ability to call as witnesses any voter ineligible to vote on the zoning issue who might have done so [under R.C. 3515.12]").

{¶ 32} Furthermore, although Crane contends that the trial court erred in permitting the clerk's testimony because it was defective, he never specifically objected to her testimony at trial and did not move to strike it. Crane thereby waived any objection to the testimony on appeal. Evid.R. 103(A)(1); *State ex rel. Chuvalas v. Tompkins* (1998), 83 Ohio St.3d 171, 173, 699 N.E.2d 58 ("[Appellant] waived any objection to these affidavits by not moving to strike them or otherwise specifying their alleged impropriety"). Crane's claims that he did object are based upon a January 2005 filing of written objections and his oral objection at trial during testimony of one of Householder's witnesses. But

Crane's written objection was specifically directed to Householder's calling witnesses "to attest as to whether they voted on November 2, 2004 in Perry County," and his trial objection also related to Householder's calling witnesses to testify about whether they had voted in the election. He did not specifically object to the testimony of the clerk, who was the board's witness. And as discussed previously, the court was justified in allowing the board to submit rebuttal evidence in the election contest.

{¶ 33} Therefore, the trial court properly credited the board's clerk's testimony that she had verified all but 60 signatures of the 335 voters for whom no digitized signature was contained in the signature books on election day.

Effect of Irregularities: Missing Signatures

{¶ 34} Crane further contends that the trial court erred in invalidating only 204 votes of persons who did not sign any signature book instead of invalidating an additional 139 votes – a total of 343 – of other persons who did not sign the signature book. The trial court determined that Crane had failed to establish by clear and convincing evidence that the irregularity affected more than 204 votes:

{¶ 35} "[I]n question * * * are the ballots given out to voters who did not sign and thus are unproven. These number 343 by contestor's count and 204 by his opponent's. The testimony of the expert tended to favor the latter number because absentee, spoiled ballots and others may have been included in the 343. Since it is contestor's burden to show by clear and convincing evidence proof of his claimed number and since he has not done so, the court accepts 204 as the number of votes cast without first signing in on the signature book."

{¶ 36} Crane challenges the trial court's finding, but he did not request a court reporter at trial, and his posttrial transcription of the trial from the court's audiotape of the proceedings is replete with the notation "word or words inaudible." In fact, during Bratz's testimony and the related court exchanges, there are well over 200 of these "inaudible" notations in the transcript.

**{¶ 37}** "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384; see, also, Painter and Dennis, Ohio Appellate Practice (2005), Section 4:9 ("If the appellant fails to ensure that the transcript includes all relevant evidence pertaining to the issues raised on appeal, the appellate court will assume that the evidence (omitted from the transcript) supported the trial court's factual findings").

**{¶ 38}** Although these authorities are generally premised on App.R. 9, which is not directly applicable in election-contest appeals to this court, see App.R. 1(A),[1] we apply them by analogy here, where the trial court had inherent authority to settle the record. In fact, in Crane's notice regarding release of audiotapes of the election-contest proceeding, he expressly stated that the trial court had advised him that "due to the placement of the microphones in the courtroom, portions of the tape recordings are of poor quality which may hamper transcription" but that Crane "will seek assistance from [the trial] Court if necessary." Evidently, Crane did not seek such assistance. Nor did Crane seek to supplement the record pursuant to S.Ct.Prac.R. V(6).

**{¶ 39}** Under these circumstances, we presume that the trial court's conclusion that Crane had not established the invalidity of an additional 139 votes was supported by the evidence submitted at trial. *Knapp.*

**{¶ 40}** Moreover, the portion of Bratz's testimony that was transcribed included his statement that if a prospective voter did not sign the book and there is no ballot stub number written in the books, "you can't tell if the person voted or

---

1. App.R. 1(A) provides, "These rules govern procedure in appeals *to courts of appeals* from trial courts of record in Ohio." (Emphasis added.)

not" by looking at the signature book. Thus, Crane's claim of an additional 139 invalid votes lacks merit because there is no clear and convincing evidence that those persons ever voted. These 139 possible votes are distinguishable from the 204 votes of persons not signing the book but for whom a ballot stub number was issued. See *McMillan*, 68 Ohio St.3d at 35, 623 N.E.2d 43 ("[contestor] has failed to demonstrate, by clear and convincing evidence, how many votes were actually affected by the irregularity").

Conclusion

**{¶ 41}** Based on the foregoing, the trial court correctly concluded that Crane failed to establish by the required clear-and-convincing standard that the irregularities affected enough votes to make uncertain or change the result of the November 2, 2004 election for Perry County Auditor. Crane has not established "extreme circumstances that clearly affect the integrity of the election." *In re Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio*, 58 Ohio St.3d at 105, 569 N.E.2d 447. The declared result has not been proven to be contrary to the will of the electorate. *Portis v. Summit Cty. Bd. of Elections* (1993), 67 Ohio St.3d 590, 592, 621 N.E.2d 1202. Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs in judgment only.

MOYER, C.J., and RESNICK, J., not participating.

_____

The Brunner Firm Co., L.P.A., Rick L. Brunner, Michael S. Kolman, and Rebecca L. Egelhoff, for appellant.

Chester, Willcox & Saxbe, L.L.P., and Donald C. Brey, for appellee Perry County Board of Elections.

Thompson Hine, L.L.P., William C. Wilkinson, and Craig A. Calcaterra, for appellee Larry Householder.

_____