[Cite as *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073.]

THE STATE EX REL. BARDWELL, APPELLANT, *v.* CUYAHOGA COUNTY BOARD OF COMMISSIONERS, APPELLEE.

[Cite as *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073.]

*Mandamus — Public-records requests — Civ.R. 11 sanctions for willful and bad-faith filing — Abuse-of-discretion standard of review of lower court judgment — Judgment affirmed.*

(No. 2009-2140 — Submitted June 9, 2010 — Decided October 26, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 93058, 2009-Ohio-5573.

_____

**CUPP, J.**

{¶ 1}  The issue before the court is whether the court of appeals abused its discretion when it imposed Civ.R. 11 sanctions against appellant, Brian Bardwell, for filing a pro se public-records mandamus complaint in bad faith.  For the following reasons, we hold that the court did not abuse its discretion, and we affirm the judgment of the court of appeals.

### Facts

{¶ 2}  On March 26, 2009, Bardwell personally requested three types of public records from the Cuyahoga County prosecutor: (1) the prosecutor's records-retention schedule, (2) communications between the Cuyahoga County Board of Commissioners and the Cleveland Plain Dealer regarding an economic-development project involving county and private developers, and (3) drafts of the agreement relating to the project.  Later that day, the prosecutor provided Bardwell its record-retention schedule.

**{¶ 3}** On March 27, 2009, the prosecutor's office provided Bardwell with communications between the commissioners and the Cleveland Plain Dealer regarding the project, including a March 19, 2009 e-mail from counsel for the Cleveland Plain Dealer requesting that the county provide the Plain Dealer with drafts of the agreements relating to the project. The e-mail asks for "drafts of the agreement contracts that the county possesses that also have been shared with representatives of the organization that would enter into the contract with the county." But the prosecutor informed Bardwell in writing that drafts of contracts relating to the project were not subject to disclosure, because they were protected by attorney-client privilege, adding, "[W]hen an agreement is finalized and ready to be submitted to the Board of County Commissioners for approval, the final agreement and drafts will be made available."

**{¶ 4}** That same day, Bardwell filed a complaint in the Eighth District Court of Appeals seeking a writ of mandamus to compel the county to provide drafts of the economic-development agreement, among other records.

**{¶ 5}** The court of appeals denied the writ and sua sponte ordered Bardwell to show cause why the court should not impose sanctions under Civ.R. 11 or R.C. 2323.51. After the show-cause hearing, the court of appeals issued a decision that stated: "Bardwell's filing of a complaint for mandamus, which was groundless in fact and legal argument, can only be the result of a willful action and constitutes bad faith. Thus, we find that Bardwell consciously violated Civ.R. 11 and that sanctions must be imposed." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, Cuyahoga App. No. 93058, 2009-Ohio-5573, ¶ 14.

**{¶ 6}** Thereafter, Bardwell filed this appeal.

## Civil Rule 11

**{¶ 7}** Civ.R. 11 provides: "The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information,

and *belief* there is *good ground* to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a *willful* violation of this rule, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule." (Emphasis added.)

**{¶ 8}** "Civ.R. 11 employs a subjective bad-faith standard to invoke sanctions by requiring that any violation must be willful." *State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, at ¶ 19, citing *Riston v. Butler,* 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, ¶ 9; *Ransom v. Ransom,* Warren App. No. 2006-03-031, 2007-Ohio-457, ¶ 25. This court has described bad faith as " 'a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. * * * It means "with actual intent to mislead or deceive another." ' " *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 151, 21 O.O.2d 420, 187 N.E.2d 45, overruled on other grounds in *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, quoting *Spiegel v. Beacon Participations, Inc*. (1937), 297 Mass. 398, 416, 8 N.E.2d 895. See also Black's Law Dictionary (9th Ed.2009) 159 (bad faith is "[d]ishonesty of belief or purpose"). Under Civ.R. 11, a court can impose sanctions only when the attorney or pro se litigant acts willfully and in bad faith by filing a pleading that he or she believes lacks good grounds or is filed merely for the purpose of delay.

**{¶ 9}** We review sanctions imposed pursuant to Civ.R. 11 under an abuse- of-discretion standard. *Dreamer*, 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, ¶ 18 ("We will not reverse a court's decision on a Civ.R. 11 motion for sanctions absent an abuse of discretion"). As long as some competent, credible evidence exists to support the court of appeals' judgment, no abuse of discretion occurred, and we cannot substitute our judgment for that of the court of appeals and reverse the judgment. See *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, ¶ 1 ("Because the court of appeals did not abuse its discretion in denying the writ when there was sufficient evidence to support the retirement system's decisions to deny benefits, we affirm"); *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶ 40 (no abuse of discretion by trial court if competent, credible evidence supports its order for a new trial); *State ex rel. Hoag v. Lucas Cty. Bd. of Elections*, 125 Ohio St.3d 49, 2010-Ohio-1629, 925 N.E.2d 984, ¶ 12; *Cross v. Ledford* (1954), 161 Ohio St. 469, 478-479, 53 O.O. 361, 120 N.E.2d 118 (reviewing court will not substitute its judgment for that of the trier of fact if there is conflicting evidence on an issue); and *McDonald v. Berry* (1992), 84 Ohio App.3d 6, 9, 616 N.E.2d 248 (no abuse of discretion by trial court in assessing Civ.R. 11 sanctions "where there is evidence to support the decision").

## Public-Records Law

**{¶ 10}** "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.' *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. The purpose of the act is 'to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy.' *State ex rel. WHIO-TV-7 v. Lowe* (1997), 77 Ohio St.3d 350, 355, 673 N.E.2d 1360. In accordance with this salutary purpose, '[w]e construe R.C. 149.43 ["availability of Public Records"] liberally in favor of broad access and resolve any doubt in favor of

public records.' *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.,* 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 17." *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 9.

{¶ 11} Imposition by a court of Civ.R. 11 sanctions upon a public-records requester in the absence of clear evidence that he or she acted willfully and in bad faith has the potential to chill public-records requests and reduce the transparency of government. Thus, courts must be very careful before imposing sanctions in a public-records case.

### Evidence Supporting Sanctions under Civ.R. 11

{¶ 12} On appeal, Bardwell contends that the court of appeals abused its discretion in imposing Civ.R. 11 sanctions against him because "[t]he record provides absolutely no indication that [he] acted in bad faith by asserting violations of the Ohio Public Records Act predicated upon the Commissioners' refusal to provide non-privileged draft contracts." The commissioners assert that at the time Bardwell filed his mandamus complaint, many of the claims were groundless, and that such conduct is indicative of Bardwell's bad faith. Despite the commissioners' assertions, Bardwell's claims may well have merit. Yet upon review of the record on appeal, we cannot agree with Bardwell's claim that the court of appeals abused its discretion in imposing Civ.R. 11 sanctions against him.

{¶ 13} In its review of this case, the appellate court observed that Bardwell did not introduce *any exhibits* at the show-cause hearing. *State ex rel. Bardwell,* 2009-Ohio-5573, ¶ 7. There is also no testimonial evidence from the show-cause hearing because Bardwell failed to request a court reporter to transcribe the hearing. Id. at fn. 1.

{¶ 14} When an appeal is filed in this court without a transcript, we generally presume the regularity of that proceeding and affirm. *Hoag,* 125 Ohio St.3d 49, 2010-Ohio-1629, 925 N.E.2d 984, ¶ 12, citing *Christy v. Summit Cty.*

*Bd. of Elections* (1996), 77 Ohio St.3d 35, 39, 671 N.E.2d 1; *State ex rel. Duncan v. Portage Cty. Bd. of Elections,* 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 17. Similarly, without the benefit of the evidence that was before the court of appeals, this court " 'has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.' " *Crane v. Perry Cty. Bd. of Elections*, 107 Ohio St.3d 287, 2005-Ohio-6509, 839 N.E.2d 14, ¶ 37, quoting *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384. These general principles, in fact, compose the argument made by the county commissioners in their merit brief to this court. In return, Bardwell has not rebutted or even addressed this argument in either of his merit briefs. Thus, because Bardwell has failed to assure this court that it has the complete record of the evidence upon which the court of appeals decided this matter, we must presume the validity of the court of appeals' award of sanctions. We cannot substitute our judgment for that of the court of appeals.

{¶ 15} Notwithstanding the application of the foregoing presumption, we also conclude that the court of appeals sufficiently detailed its rationale for the decision to impose sanctions. The court of appeals' opinion specified multiple reasons, including many that are not rebutted on appeal by Bardwell, to support its finding of bad faith:

{¶ 16} "In the case sub judice, we find that Bardwell willfully violated Civ.R. 11 by filing a complaint for a writ of mandamus in bad faith. Our finding of bad faith is based upon the following: (1) Bardwell failed to comply with Loc.App.R. 45(B)(1)(a), which mandates that an extraordinary writ must be supported by a sworn affidavit that specifies the details of the claim; (2) a period of only one day lapsed between the making of Bardwell's request for public records and the filing of the complaint for a writ of mandamus; (3) Bardwell was promptly provided with a copy of the requested records retention schedule, thus

rendering his request moot; (4) Bardwell was promptly provided with all public records that were not exempt from disclosure, thus rendering his request moot; (5) Bardwell was promptly provided with a detailed explanation, with supporting legal precedent, with regard to the exempted records; (6) Bardwell's request for records was not overly broad, but very specific, which did not necessitate that the Prosecutor provide an opportunity to revise the request; (7) all requested non-exempt records were promptly provided, thus negating any claim that the Prosecutor did not properly organize and maintain its records; (8) Bardwell failed to establish any "lost use" that resulted from a casual request for his identity; (9) Bardwell was provided with copies of all exempted records, within ten business days of the request; (10) Bardwell failed to amend his complaint for a writ of mandamus to take into consideration the records provided by the Prosecutor; and (11) Bardwell failed to file a brief in opposition to the Prosecutor's motion for summary judgment, which contained a properly executed sworn affidavit and other exhibits." *Bardwell*, 2009-Ohio-5573, at ¶ 14.

{¶ 17} Based on the foregoing, it is clear that the court of appeals considered the testimony and exhibits submitted by the parties at the show-cause hearing and concluded that sanctions should be imposed against Bardwell for filing a public-records mandamus complaint in bad faith and in willful violation of Civ.R. 11. *Bardwell*, 2009-Ohio-5573, at ¶ 1, 7. Accordingly, we hold that the court of appeals did not abuse its discretion, and we affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

BROWN, C.J., and PFEIFER, J., dissent.

_____

**BROWN, C.J., dissenting.**

**{¶ 18}** In my view, the court of appeals abused its discretion in sanctioning Bardwell under Civ.R. 11. Accordingly, I respectfully dissent.

**{¶ 19}** Civ.R. 11 provides: "The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule."

**{¶ 20}** Thus, under Civ.R. 11, a court may impose sanctions only when the attorney or pro se litigant acts willfully and in bad faith and submits a pleading or other legal document believing that it lacks "good ground" to support it.

**{¶ 21}** I acknowledge that Bardwell did not provide a transcript of the show-cause hearing before the court of appeals. Nor did he prepare for this court a statement in lieu of a transcript. See App.R. 9(C). Nevertheless, Bardwell did attach to his answer to the court of appeals' show-cause order evidence in the form of an affidavit. That affidavit refutes the conclusion that Bardwell filed in bad faith a complaint that lacked "good ground to support it" in violation of Civ.R. 11. The affidavit is present in the record before us and was also in the record when the court of appeals considered the imposition of sanctions.

**{¶ 22}** In his affidavit, Bardwell affirmatively states his motive for filing the mandamus case in the court of appeals: "to ensure that millions of taxpayer dollars were not wasted" relative to the Medical Mart project, an economic-

development project, and "because the County had refused to release various records, including drafts of development agreements and a voice mail message referred to in an e-mail to their outside counsel." Bardwell further stated in his affidavit that he had "no interest in harassing the County, injuring the County or increasing the cost of litigation, and did not file the Complaint in this case to any of those ends." In my view, nothing in the record before us refutes that these sworn statements accurately reflected Bardwell's state of mind at the time he signed the mandamus complaint. As discussed below, the state of mind reflected by these statements is inconsistent with a finding of bad faith sufficient to support an order of Civ.R. 11 sanctions.

{¶ 23} Accordingly, while it may be true, as observed by the court of appeals, that Bardwell did not introduce any exhibits *at* the show-cause hearing, Bardwell did provide an exhibit *before* the show-cause hearing that constituted evidentiary evidence supporting his assertion that his state of mind at the time he filed the mandamus action was not that of bad faith. And while it is also true, as observed by the majority, that Bardwell failed to request a court reporter to make a record at the show-cause hearing, neither did the county request that the show-cause hearing be recorded.[1]

{¶ 24} I cannot agree on these facts that "because Bardwell has failed to assure this court that it has the complete record of the evidence upon which the court of appeals decided this matter, we must presume the validity of the court of appeals' award of sanctions." See majority opinion at ¶ 14. In the seminal case, this court acknowledged the duty of an appellant to provide a transcript " 'of such parts of the proceedings not already on file *as he deems necessary for inclusion in*

---

1. In its opinion, the court of appeals observed: "The parties were provided with an opportunity to allow for the presence of an official court reporter in order to preserve the record. No party arranged for the presence of an official court reporter at the show cause hearing as held on September 22, 2009." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, Cuyahoga App. No. 93058, 2009-Ohio-5573, ¶ 7, fn. 1.

*the record,'* "—not the "complete record" of all the evidence. (Emphasis added.) *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384, quoting former App.R. 9(B), 54 Ohio App.2d xv. And as noted in a footnote, *Knapp* further observed, "It is also true that the appellee must bear some burden for providing an adequate transcript under App.R. 9(B). The relevant portion of that rule states that '[i]f the appellee deems a transcript of other parts of the proceedings to be necessary he shall * * * file and serve on the appellant a designation of additional parts to be included.' " Id., quoting former App.R. 9(B), 54 Ohio App.2d xv.

{¶ 25} In my view, Bardwell provided prior to the show-cause hearing evidence that established an absence of bad faith. At the hearing, the county presumably argued other facts in rebuttal. Because we lack a transcript informing us of those other arguments or testimony—evidence that the county needs in order to rebut the evidence contained in Bardwell's affidavit—the detrimental consequences of the lack of a transcript in this case should fall on the county. In short, I disagree that a "presumption of regularity" should be applied in this case, particularly because presuming "regularity" here is equivalent to finding that the court of appeals heard evidence at the show-cause hearing rebutting the evidence contained in the affidavit previously submitted by Bardwell.

{¶ 26} On March 26, 2009, Bardwell personally requested three types of public records from the county prosecutor: (1) the prosecutor's records-retention schedule, (2) communications between the Cuyahoga County Board of Commissioners ("county") and the Cleveland Plain Dealer regarding the Medical Mart economic-development project, and (3) "drafts of contracts or development agreements related to Medical Mart projects." Later that day, the prosecutor provided Bardwell its record-retention schedule.

{¶ 27} On March 27, 2009, the prosecutor's office provided Bardwell with communications between the county and the Plain Dealer regarding the

project. However, the prosecutor also informed Bardwell in writing that drafts of the agreement were not subject to disclosure, because they were protected by attorney-client privilege, adding, "[W]hen an agreement is finalized and ready to be submitted to the Board of County Commissioners for approval, the final agreement and drafts will be made available."[2] This communication constituted a denial of Bardwell's public-records request until an unspecified time in the future, i.e., if and when the negotiations were finalized. The county effectively informed Bardwell of its legal position that drafts of the proposed contractual agreements were exempt from the Public Records Act, R.C. 149.43, during the period in which those agreements were being negotiated.

{¶ 28} It is well established that documents protected by attorney-client privilege are exempt from the Public Records Act. *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, at ¶ 27. And during contract negotiations, the attorney-client privilege clearly applies to communications between negotiating entities and their own legal counsel. But I am unaware of any precedent that recognizes an attorney-client privilege as to draft contractual agreements once they are freely exchanged between the negotiating entities.

{¶ 29} Attached to Bardwell's answer to the court of appeals' show-cause order was an e-mail dated March 19, 2009, from David Marburger, counsel for

---

2. On March 27, 2009, prior to the filing of the complaint in mandamus, the county responded to Bardwell's request for "[d]rafts of contracts or development agreements related to Medical Mart projects" as follows: "Regarding your second request, drafts of the Development Agreement are not records at this time, since terms of Development Agreement are still being negotiated, so there presently is no agreement that has been submitted to the Board of County Commissioners for their approval. Moreover, the rough drafts of the agreement that is being negotiated are exempt from disclosure because they include confidential communications between the public client and its attorneys including but not limited to the attorneys' thoughts and opinions in rendering legal advice. * * * When an agreement is finalized and ready to be submitted to the Board of County Commissioners for approval, the final agreement and drafts will be made available."

the Plain Dealer, to Fred Nance, counsel for the county, regarding the economic-development project. It stated:

**{¶ 30}** "Fred: I just left a voice mail for you – pls [sic] give the county the green lite [sic] to allow the Plain Dealer to inspect & receive a copy of the drafts of the development contracts that the county possesses *that also have been shared with representatives of the organization that would enter into the contract with the county*." (Emphasis added.)

**{¶ 31}** Bardwell's affidavit included as an exhibit the Marburger e-mail. In my view, Bardwell could reasonably infer from this e-mail that a licensed attorney representing the Plain Dealer had rejected the county's legal assertion that the draft contractual agreements were protected by attorney-client privilege once they were released to third parties. Moreover, in his answer to the court of appeals' show-cause order, Bardwell expressly stated that "[a]s negotiations have been ongoing for more than a year, it is most likely that the drafts have been exchanged back and forth between the two parties, waiving any privilege that the County might have claimed." His affidavit and written argument provide persuasive evidence that Bardwell believed that drafts of the economic agreement existed at the time of his public-records request and were nonprivileged public records required to be disclosed, despite the county's assertions to the contrary.

**{¶ 32}** Contract negotiations are frequently fragile, and the public disclosure of draft proposals exchanged during negotiations may hamper the ability of a public entity to obtain for the public the most favorable terms. Perhaps for this reason, the General Assembly has already provided that a county using a competitive, sealed-proposal process pursuant to R.C. 307.86 may defer until after the award of the contract Public Records Act requests for public inspection and copying of "proposals and any documents or other records related to a subsequent negotiation for a final contract." R.C. 307.862(C). To the best of my knowledge, however, it is unresolved whether documents related to the

negotiation of other contracts are included within the short-term exemption to the Public Records Act provided by R.C. 307.862 or are otherwise exempt from disclosure prior to submission of final agreements. That legal issue can be resolved only through litigation, such as that initiated by Bardwell when he filed the mandamus action in the court of appeals.

{¶ 33} Bardwell filed his mandamus action after having received information provided to him by the prosecutor's office earlier that day, including Marburger's e-mail and a letter clearly stating the county's refusal to disclose the draft agreements at that time. Bardwell could reasonably conclude from the Marburger e-mail that the Plain Dealer was aware of or believed that there were nonprivileged drafts of the agreement. Pursuant to the e-mail and Bardwell's affidavit, it is similarly reasonable to conclude that Bardwell believed that the county had drafts of the agreement that were not subject to attorney-client privilege and were required to be disclosed to him, but yet were being withheld. Thus, I would conclude that the court of appeals abused its discretion in finding that Bardwell lacked a good-faith belief that his complaint had a reasonable basis in law and fact.

{¶ 34} Moreover, in my view, when Bardwell filed suit in the court of appeals seeking a writ of mandamus to compel the county to provide copies of drafts of the Medical Mart agreement exchanged during the negotiations, good grounds to support the complaint existed as a matter of law. Accordingly, I believe the court of appeals wrongly concluded that Bardwell's complaint was "groundless in fact and legal argument." *State ex rel. Bardwell v. Cuyahoga County Bd. of Commrs.*, Cuyahoga App. No. 93058, 2009-Ohio-5573, ¶ 14.

{¶ 35} In light of the fact that Bardwell's mandamus complaint framed a legitimate legal issue, i.e., whether draft contractual agreements shared between parties to potential public contracts are exempt from the public-records act, I do not believe that the other reasons enumerated by the court of appeals and cited by

the majority support a finding of bad faith on the part of Bardwell at the time he signed the mandamus complaint. Those purported justifications either (1) recount pleading deficiencies in the nature of those frequently made by lay litigants, (2) refer to facts that occurred *after* the filing of the complaint, (3) fault Bardwell for moving quickly to file suit after the county expressly denied, in writing, his request for what he believed to be public records subject to disclosure, (4) suggest that bad faith is demonstrated when a complaint includes some claims that lack merit, e.g., the county's asserted failure to provide a copy of the retention schedule, or (5) assume as an underlying premise that the county correctly withheld the requested draft agreements based on their status as privileged and exempt from the Public Records Act—even though the soundness of that premise was the very legal issue Bardwell's complaint raised.

{¶ 36} I would hold that the court of appeals abused its discretion by imposing monetary sanctions on Bardwell pursuant to Civ.R. 11. I therefore respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

American Civil Liberties Union of Ohio Foundation, Inc., Brian J. Laliberte, and Carrie L. Davis, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for appellee.

_____